**STATE of Maine**

v.

**Bruno E. PETERSON.**

Supreme Judicial Court of Maine.

Dec. 10, 1976.

Joseph E. Brennan, Atty. Gen., John R. Atwood, Charles K. Leadbetter, Asst. Attys. Gen., Augusta, Richard Wise, Law Student Intern, for plaintiff.

Grossman, Faber & Miller, P. A. by Edward B. Miller, Barry M. Faber, Rockland, for defendant.

Before DUFRESNE, C. J., and WEATHERBEE*, POMEROY, WERNICK, ARCHIBALD and DELAHANTY, JJ.

WERNICK, Justice.

Defendant Bruno E. Peterson has appealed from a judgment of the Superior Court (Knox County) entered upon a jury verdict, returned February 27, 1975, find-

ing defendant guilty of felonious homicide punishable as manslaughter.[1]

We deny the appeal.

The jury could justifiably have found the following facts. Defendant spent the evening of January 25, 1974 playing pool in a bar in Belfast, Maine, with Russell E. Knight. The two of them subsequently returned to defendant's home in St. George. Either late that night, or early on January 26, 1974, defendant and Knight engaged in a scuffle during which a shot was fired from a rifle owned by defendant, the shot fatally wounding Knight.

 All of defendant's points on appeal—except one—we hold, without need of extended discussion, to be without merit.[2]

The one point on appeal we have reserved for detailed consideration, but which we hold likewise lacking in merit, is directed to alleged error by the presiding Justice in his refusal before trial to suppress, and in his ruling at trial admitting, inculpatory statements made by defendant shortly after Knight's death.

The following facts could justifiably have been found as the circumstances in which defendant made admissions.

At approximately 12:35 a. m., January 26, 1974, defendant telephoned the Knox County Sheriff's Department in Rockland to report a serious accident at his house

---

* Weatherbee, J., sat at argument but died before the opinion was adopted.

1. The indictment had charged that when defendant committed felonious homicide punishable as manslaughter, he was armed with a firearm (17 M.R.S.A. § 2551–A). Apparently the jury found that this charge that defendant was "armed", as a factor bearing on the severity of punishment, had not been proved.

2. The points on appeal we have thus summarily rejected are: (1) the alleged deficiency of the indictment as a "short-form" felonious homicide indictment; (2) impropriety of opening remarks of the prosecuting attorney; (3) error of the presiding Justice in refusing to allow the jury a view of the room where the crime occurred; (4) pre-trial publicity, as allegedly prejudicial, even though no juror had been exposed to it; (5) error by the presiding Justice in refusing to allow the jury to test the trigger of defendant's rifle; (6) allegedly erroneous admission of "physical" evidence; (7) an allegedly prejudicial response by the presiding Justice to a question posed by the jury after it was deliberating; and (8) inadequacy of the evidence to support the conviction.

and request ambulance assistance. Deputy Sheriff Shirley Beal, who was acting as dispatcher that night, took the call. Beal had known defendant for more than a decade and had prior opportunity to observe defendant when he had been under the influence of alcohol. Beal testified that on this particular occasion there was no question that defendant had been "drinking."

Shortly thereafter, at approximately 12:45 a. m., State Police Trooper Charles Phillibrown came to defendant's residence. He secured the crime scene but did not see defendant at this time. Approximately ten minutes later, Phillibrown found defendant walking on a nearby highway and invited him to enter the cruiser.

Phillibrown immediately gave to defendant the *"Miranda"* warnings and then inquired whether defendant understood the rights therein described. Defendant assured Phillibrown that he understood and then Phillibrown asked if defendant wished to talk about what had happened. Defendant assented and proceeded to describe the evening in Belfast and the return to St. George. He told Phillibrown that upon their return, he and Knight loaded defendant's rifle, started wrestling and the gun went off.

At the time of this conversation with defendant, Phillibrown was aware from his observations of defendant that defendant had been "drinking." Phillibrown concluded, however, that defendant was fully capable of normal body movement and rational conversation. Defendant's conversation with Phillibrown lasted five or ten minutes, after which Phillibrown requested defendant to wait for questioning by other officers. There is no claim that defendant was under arrest, as a source of coercion. Shortly thereafter, defendant went to his brother-in-law's house, unaccompanied by police.

Approximately three hours elapsed before defendant again talked with law enforcement officers. At 3:55 a. m., he returned, with his brother-in-law, to his own home. About an hour previously, State Police Detective Dale Ames had come to defendant's home. He was in process of investigating the crime scene when defendant arrived. Defendant sat at the kitchen table and a conversation with Ames followed. Defendant described the shooting of Knight as having occurred in a manner suggesting that defendant was a few feet from Knight when Knight accidentally shot himself.[3] Ames then read the *"Miranda"* warnings to defendant. A discussion followed, lasting over an hour, during which defendant admitted that he had shot Knight while he was wrestling with him. Ames noticed that defendant had been drinking and characterized his condition as "borderline." Like Phillibrown, Ames found defendant able to respond logically, and with understanding, to his conversation. In addition, Ames took special note that defendant was able to pronounce difficult combinations of words without slurring.

Finding that defendant was legally competent to, and did, effectively waive his *"Miranda"* rights, and, generally, had acted voluntarily, the presiding Justice admitted in evidence all the above-described inculpatory statements of defendant.[4]

---

3. Trial testimony showed, without contradiction and unimpeached, that the fatal bullet entered Knight's body through his back.

4. It appears that the presiding Justice utilized alternative rationales of decision: (1) the conversation with Trooper Phillibrown, and perhaps the initial stages of the session with Detective Ames, had occurred in non-custodial circumstances outside the prophylactic protections of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). See, e. g.,

*Beckwith v. United States*, 425 U.S. 341, 96 S.Ct. 1612, 48 L.Ed.2d 1 (1976); and (2) defendant "at all times" was conscious of the effect of his acts, and, therefore, competently waived the rights protected by the *"Miranda"* warnings. Since, as our discussion will show, we agree that the *Miranda* warnings were properly given, and the rights competently waived, we do not reach the "noncustodial circumstances" alternative seemingly relied on by the presiding Justice.

We decide that the presiding Justice's findings were warranted.

■ The arguable aspect of the ruling of the presiding Justice is his allowing in evidence the inculpatory statements made by defendant to Detective Ames *before* Ames had given any *Miranda* warnings to defendant and *three hours after* Phillibrown had read defendant his *Miranda* rights. We conclude that the evidence supports the conclusion of the presiding Justice that defendant effectively waived his *Miranda* rights at the time Officer Phillibrown informed him of those rights, and this waiver continued effective, despite the lapse of three hours, to the time of Detective Ames' conversation with the defendant.

■ Between the time of defendant's discussion with Officer Phillibrown, and the conversation with Detective Ames nothing had occurred showing a rescission, or impairment,[5] of the ostensibly competent and voluntary conduct of defendant in waiving his *Miranda* rights and making inculpatory statements to Phillibrown. Concerning the significance of lapse of time, as such, we have recognized that the lapse of even a substantial period after the giving of a *Miranda* warning does not *per se* render such warning ineffective and require repetition of it as a pre-condition of the constitutional validity of subsequent inculpatory statements. *State v. Myers*, Me., 345 A.2d 500 (1975). Specifically in the instant situation, *Myers* in this jurisdiction, and decisions elsewhere, show that a lapse of time longer than the three hours here involved does not *by itself* require reiteration of a previously given *Miranda* warning. *People v. Hill*, 39 Ill.2d 125, 233 N.E.2d 367 (1968); cert. den. 392 U.S. 936,

88 S.Ct. 2305, 20 L.Ed.2d 1394 (1968); *State v. Magee*, 52 N.J. 352, 245 A.2d 339 (1968); cert. den. 393 U.S. 1097; 89 S.Ct. 891, 21 L.Ed.2d 789 (1969); *Maguire v. United States*, 396 F.2d 327 (9th Cir. 1968), .cert. den. 393 U.S. 1099, 89 S.Ct. 897, 21 L.Ed.2d 792 (1969); *United States v. Springer*, 460 F.2d 1344 (7th Cir. 1972); cert. den. 409 U.S. 873, 93 S.Ct. 205, 34 L.Ed.2d 125 (1972).

Since there was no showing, here, of any significant change of circumstances during the three hour interval between Officer Phillibrown's discussion with defendant and defendant's conversation with Detective Ames, we find no basis to reject, as plainly erroneous, the finding of the presiding Justice that defendant's *ostensibly* competent and voluntary waiver of his privilege against self-incrimination given to Officer Phillibrown continued as a legally effective waiver of defendant's privilege of self-incrimination for the purposes of defendant's conversation, three hours later, with Detective Ames.

The ultimately determinative question, then, is whether at the time defendant ostensibly waived his privilege against self-incrimination to speak to Phillibrown, defendant was *actually* competent to waive his rights.

■ That a defendant is under the influence of alcohol does not suffice, *by itself*, either to render an admission involuntary (in the due process sense) or preclude an effective waiver of the rights protected by the *"Miranda"* warnings. *State v. Warner*, Me., 237 A.2d 150, 160 (1967); *State v. Hazelton*, Me., 330 A.2d 919, 923–924 (1975). Impairment by alcohol is rather only one factor to be considered in the

---

5. In Detective Ames' presence defendant drank one bottle of beer before he made any statements to Ames. The presiding Justice was warranted in his conclusion that this additional drinking by defendant had no sig-

nificant effect on him and defendant remained "consciously and effectively aware of his behavior and what he was doing and the consequences . . . ."

totality of the circumstances bearing upon defendant's competence.

 As to such totality of circumstances, here, Trooper Phillibrown testified that although defendant was impaired to some degree by alcohol, defendant understood the rights described to him in the *Miranda* warnings and the consequences of his acts and conversation. This testimony, tending to show that defendant had not reached the state which would have rendered his statements inadmissible under *State v. Warner*, supra, permitted a finding of competence. *State v. Hazelton*, supra. Even if Phillibrown's assessment of defendant's condition was contradicted, and it appears that it was not, such conflict would have been for the fact-finder to resolve and would not have prevented the determination here made. *State v. Collins*, Me., 297 A.2d 620, 628 (1972). The statements of defendant were coherent responses to questions asked of him and his movements were normal. Further, nothing in the evidence suggests inducement, deception or coercion on the part of the police during any of the conversations. *State v. Hazelton*, supra, at 924. Indeed, defendant was not placed under arrest until the conclusion of his session with Detective Ames.

We conclude, therefore, that the evidence was sufficient to support the findings of the presiding Justice, as reached beyond a reasonable doubt, that (1) relative to all inculpatory statements made by him, defendant had competently made an effective waiver of his constitutional rights and privileges prophylatically protected by the *"Miranda"* warnings and (2) in all other material respects, all of defendant's inculpatory statements were made voluntarily, thus to meet constitutional "due process of law" mandates.

The entry is:

*Appeal denied.*