**STATE of Maine**

v.

**Frederick DESJARDINS.**

Supreme Judicial Court of Maine.

May 11, 1979.

---

David M. Cox, Dist. Atty., Gary F. Thorne (orally), Asst. Dist. Atty., Bangor, for plaintiff.

Hall & DeSanctis by Richard W. Hall, Bangor, (orally), for defendant.

Before McKUSICK, C. J., WERNICK, ARCHIBALD, GODFREY and NICHOLS, JJ., and DUFRESNE, A. R. J.

DUFRESNE, Active Retired Justice.[1]

Frederick Desjardins (defendant) was tried upon a three-count indictment charging him with the following offenses; count I—unlawful trafficking in a schedule W drug, i. e. cocaine, on August 26, 1977, pursuant to 17–A M.R.S.A. § 1103: count II—unlawful trafficking in a schedule X drug, i. e. phencyclidine, on September 21, 1977, also under 17–A M.R.S.A. § 1103; count III—unlawful furnishing of a schedule Z drug, i. e. marijuana, on September 21, 1977, contrary to 17–A M.R.S.A. § 1106. Found guilty on all three counts by jury verdict in the Superior Court (Penobscot County), the defendant appeals from the ensuing judgments. We deny the appeal.

### Facts

James Leighton, a police officer, was employed as a Unit Commander with the Division of Special Investigation (DSI) under the Department of Public Safety of the State of Maine. He was an undercover drug investigator for the Department in its efforts to ferret out the drug traffic and bring the drug dealers to justice. Assigned to the County of Penobscot, he had befriended an informant who had proven reliable. On August 26, 1977 this informant advised Leighton that cocaine could be gotten from the defendant Desjardins. They proceeded to Desjardins' residence at 6 Water Street, in Orono, and Leighton paid Desjardins the sum of $100 for a vial of

1. Sitting by assignment.

cocaine. The State's expert chemist did later confirm that the drug was in fact cocaine.

On September 21, 1977 Officer Leighton contacted the defendant by phone and made arrangements to purchase from him that evening a thousand "hits" of phencyclidine for $850. The meeting was scheduled for 6:00 p. m. at the defendant's home. The blind having been set as to time and place in the attempt to make this second purchase of drugs from the defendant, Leighton then moved onto the preparation for the catch. He contacted Officer Stevens, the Unit Commander with the DSI in the area, to plan the arrest of the defendant upon the consummation of the prospective drug sale. Pursuant to the formulated course of action devised for the conclusion of Desjardins' drug activities, Leighton did appear at the defendant's home that evening equipped with a small transmitter hidden upon his person which relayed the conversation between the officer and the defendant to police officers stationed close by in a patrol car. When the officers who were monitoring the conversation determined that the drug sale had been effected, the order was given to move in. Under the supervision of Officer Stevens, the police, some in uniform and others in plain clothes, did enter the Desjardins residence and the defendant was placed under arrest in the living room of the house where the transaction with Officer Leighton had taken place. On his way through the kitchen, Officer Crowley, as had Officer Leighton when he came in, did notice in plain view a clear plastic bag containing what he believed to be marijuana. He asked the defendant, who, by this time, had been fully advised of his *Miranda* rights, if there was any other "dope" in the house, to which Desjardins answered that several paper bags and suitcases in the kitchen contained respectively marijuana and related drug paraphernalia. All the marijuana and the suitcases with their con-

tents were seized and later admitted in evidence with the express statement by defense trial counsel that there were no objections to the admissibility of these exhibits.

In his points on appeal, the defendant claims that the Superior Court Justice at trial committed reversible error, when he permitted the State's exhibits consisting of the marijuana and the related drug paraphernalia to go to the jury, whether the evidence was in plain view or otherwise, because, so he asserts, the police invasion of the privacy of his home, excepting for Officer Leighton, originated from the electronic interception of the oral communications between Leighton and himself and under the circumstances was subject to the provisions of 15 M.R.S.A. § 712, which specifically proscribe the use of the fruits of such police activity in court. Section 710, Title 15, M.R.S.A., makes it a criminal offense for "[a]ny person, *other than* an employee of a common carrier as defined in this chapter or *a law enforcement officer carrying out practices otherwise permitted by this chapter*, who willfully intercepts, attempts to intercept . . . . any wire or oral communication." (Emphasis provided) Section 712, Title 15, implements the reference exception in section 710, but includes therein an express exclusionary provision respecting *any* evidence obtained through such interception.[2] The defendant argues that the police monitoring in the instant case, even if permissible under 15 M.R.S.A. § 712, does not sanction the use of the information obtained through the interception to give the officers probable cause to believe that a felony was being committed in the Desjardins apartment as a basis to support the subsequent seizure of the marijuana and related drug paraphernalia, since, under the overriding mandate of the statute, *any* evidence obtained from such interception *shall not be admissible in a court of law*. We need not reach the issues presented by the

---

**2.** 15 M.R.S.A. § 712 in pertinent part reads as follows:

"It shall not be a violation of this chapter for a person acting under color of law to intercept a wire or oral communication, where such per-

son is a party to the communication or one of the parties to tne communication has given prior consent to such interception, *except that any evidence so obtained shall not be admissible in a court of law*." (Emphasis added)

defendant in connection with the possible application of 15 M.R.S.A. § 712 to the facts of this case. Such issues are not properly before us and we decline to determine them on the instant inadequate record.

We note again that at trial the defendant affirmatively asserted that he had no objection to the admissibility of the marijuana and drug paraphernalia seized by the police from his home on September 21, 1977. Under such circumstances, we recognize that the issue could still be properly subject to review in the appellate court, if it were presented unsuccessfully to the trial court in a pretrial motion to suppress.

In *State v. Hazelton,* Me., 330 A.2d 919 (1975), it was held that a pre-trial ruling denying the suppression of evidence upon hearing of a motion to suppress pursuant to Rule 41(e) *ipso facto* saves the point for appellate review without need for an objection at trial. Thus, the defendant's affirmative response at trial that he had no objection to the admissibility of the evidence, without more, will not be considered a waiver of the objection raised at the pre-trial hearing which under the *Hazelton* ruling is automatically saved for appellate review.

Absent, however, the presentation of this particular issue to the trial court for adjudication, either at the pre-trial hearing on the motion to suppress or at the trial itself, the defendant's present theory of inadmissibility of the evidence, if advanced for the first time before the appellate tribunal, would come too late. It is a well established principle of appellate procedure in criminal proceedings that a foundation must be laid in the trial court for review of the claim of error by the appellate court. *State v. Inman,* Me., 350 A.2d 582 (1976); *State v. Pike,* Me., 306 A.2d 145 (1973); *State v. Wheeler,* Me., 252 A.2d 455 (1969).

The issue, as previously indicated, was not raised during the course of the trial; it could have been, if it was not presented to the trial court in the defendant's motion to suppress. Indeed, as ruled in *State v. Bishop,* Me., 392 A.2d 20 (1978),

the mandatory aspect of Rule 41(e) did not apply to the instant case, where the defendant's trial occurred prior to the *Bishop* decision.

From this record, however, it does not appear that the issue was articulated at the hearing upon the motion to suppress the evidence. Neither the motion itself to suppress, nor the decision of the Justice below thereon, was made a part of this record. The burden is on the defendant appellant to provide the appellate court with an adequate record in connection with the specific claim of error. *State v. Bellanceau,* Me., 367 A.2d 1034 (1977); Rule 39(g), M.R. Crim.P. As stated in *Grondin v. Coyne,* Me., 395 A.2d 459, at 460 (1978):

"It is an appellant's burden to support its appeal with a record sufficient to allow an appellate court the opportunity to adequately review those issues presented."

True, the transcript of the hearing on the suppression motion is part of this record and, if it appeared clearly therein that the particular issue had been presented to the presiding Justice, the absence of the motion to suppress and the Court's decision thereon might not foreclose our consideration of the point on its merits. See *State v. Boutot,* Me., 325 A.2d 34 (1974); *State v. Hume,* 145 Me. 5, 70 A.2d 543 (1950).

The record does fully disclose the circumstances surrounding the electronic interception of the Leighton—Desjardins conversation which preceded the police entry into the Desjardins residence and the subsequent seizure of the evidence, which the defendant now says should not have been admitted against him at trial. But, nowhere does it appear that the exclusionary clause of 15 M.R.S.A. § 712 was being pressed before the Court as a basis for the suppression of the seized marijuana and related drug paraphernalia. The statute was never mentioned. As a matter of fact, at the conclusion of the hearing, the defendant's attorney made the following requests which seemingly would clearly indicate that the present issue was not raised in the Court below.

"Your Honor, rather than comment on what I would like to say, if the Court would permit me and reserve its ruling and give me at least 10 days, *I would like to submit a short brief* both *on* the facts that were elicited here and *the law on the search and seizure.*

\*    \*    \*    \*    \*    \*

[Defendant's attorney]: And further, if it please the Court, this is not pending here, we might save a lot of time. I assume I don't need any formal motions to get hold of the tape and at least listen to it? [State's attorney]: Your Honor, the tape is available.

The Court: As a matter of fact, Mr. [Attorney], you may, I gather, listen to the tape and if you feel anything is on the tape that's relevant to the issues in this area, you may move to reopen the record.

[Defendant's attorney]: Thank you, Your Honor."

This Court has heretofore ruled that the omission from the record on appeal of the trial motion and of the court's order thereon denying the same left the appellate tribunal with an insufficient basis for reviewing the action of the trial court with respect to the points raised on appeal. *State v. Armstrong,* Me., 344 A.2d 42 (1975). See also *Cutler Associates, Inc. v. Merrill Trust Co.,* Me., 395 A.2d 453 (1978); *Berry v. Berry,* Me., 388 A.2d 108 (1978).

■   Even though the defendant as a person aggrieved by a seizure which he claims unlawful could, pursuant to Rule 41(e), M.R.Crim.P., move the Superior Court to suppress for use as evidence

"anything so obtained on the ground that: (1) The property was illegally seized without warrant,"

and even though we may presume the motion to suppress in the instant case did state the grounds for relief in the broad and literal conclusory terms of the rule, that the marijuana and related drug paraphernalia were "illegally seized without warrant," such, without more, would be insufficient to raise the question presently pressed before

this Court—whether 15 M.R.S.A. § 712 was applicable under the circumstances of this case, and, if applicable, whether, by reason of the express statutory exclusionary clause, the ultimate seizures were within the scope of the mandated exclusion and subject to suppression by the court. Rule 41(e) provides that "the justice [hearing the suppression motion] shall receive evidence on any issue of fact necessary to the decision of the motion." This language implies that the suppression movant must articulate in his motion with sufficient particularity the specific reason on which he bases his claim that the seizure without warrant was illegal, so that the court will recognize the issue to be decided. See *Cohen v. United States,* 378 F.2d 751 (9th Cir. 1967), cert. denied, 389 U.S. 897, 88 S.Ct. 217, 19 L.Ed.2d 215; *United States v. One 1965 Buick,* 392 F.2d 672 (6th Cir. 1968).

In *State v. Paris,* Me., 343 A.2d 588 (1975), this Court held that it could not, in furtherance of a sound appellate practice, take cognizance of the appellant's contention that his arrest by the trooper became an illegal arrest on the ground the existing circumstances did not justify the making of a custodial arrest, because that particular issue had not been raised in the motion to suppress.

This Court has consistently held to the rule that issues will not be considered on appeal unless they were raised at the trial level and the record adequately reflects the particulars thereof to permit a proper disposition of the questions involved, except in a manifest error—serious injustice context or where jurisdiction of the court might be involved. *State v. Chesnel,* Me., 358 A.2d 381 (1976) (chamber conference omitted); *State v. Taylor,* Me., 343 A.2d 11 (1975) (offensive argument to jury not appearing of record); *State v. Sheehan,* Me., 337 A.2d 253 (1975) (basis of objection to evidence being different on appeal from that at trial); *State v. Pritchett,* Me., 302 A.2d 101 (1973) (voir dire examination omitted from the record); *State v. Christian,* Me., 235 A.2d 294 (1967) (evidence supporting quashing of array not transcribed); *State v. Val-*

*lee,* 137 Me. 311, 19 A.2d 429 (1941) (what testimony was read to the jury undisclosed of record).

■ As stated in *State v. Thibodeau,* Me., 317 A.2d 172, at 182 (1974):

"An appellate court will review error on the basis of objections raised at the trial level and will not consider new and different reasons proffered for the first time on appeal to support a contrary ruling."

■ We decline to review a point on appeal which, in the absence of an adequate record, does not appear to have been ruled upon at trial. *State v. Russo,* Me., 400 A.2d 383 (Opinion April 19, 1979); *State v. Lang,* Me., 396 A.2d 1012 (1979); *State v. King,* Me., 330 A.2d 124 (1974); *State v. Carvelle,* Me., 290 A.2d 190 (1972); *State v. Greaves,* Me., 281 A.2d 445 (1971); *United States v. Di Re,* 332 U.S. 581, 68 S.Ct. 222, 92 L.Ed. 210 (1948).

We fully agree with the Court of Appeals for the 8th Circuit when it said in *Gendron v. United States,* 295 F.2d 897 (8th Cir. 1961):

"The application of Rule 52(b) rests within the sound judicial discretion of the appellate court. The normal rule is that an appellate court should not consider questions which have not been properly raised in the trial court and upon which the trial court has had no opportunity to pass. The plain error rule should be applied with caution and should be invoked only to avoid a clear miscarriage of justice. To exercise the right freely would undermine and impair the administration of justice and detract from the advantages derived from orderly rules of procedure."

■ No showing has been made that the defendant appellant was deprived of the fundamental fair trial to which he was constitutionally entitled. See *State v. Pomerleau,* Me., 363 A.2d 692 (1976); *State v. Burnham,* Me., 350 A.2d 577 (1976).

The next point of error raised by the defendant in this appeal has reference to the admissibility in evidence of the vial of cocaine bought by Officer Leighton from the defendant on August 26, 1977, the subject matter of count I of the indictment. Desjardins claims the record shows that the continuity of the chain of possession of the purchased drug was so questionable as to throw suspicion on the integrity of the exhibit, rendering the evidence inadmissible. We disagree.

The State's evidence was in conflict. Officer Crowley, who had received the exhibit from Leighton, testified that the marked and sealed envelope containing the vial of cocaine was placed by him in the safe at DSI headquarters on the following Monday, August 29, 1977 to be retrieved by him on September 7th for delivery to the State's chemist for analysis. Crowley admitted that Officer Stevens was in charge of the safe and was the only person who knew the combination. Stevens, on the other hand, positively testified at trial that he had never seen the exhibit previously and that it had not been kept in the safe. On the defendant's objection to the admissibility of this exhibit because of the serious discrepancy in the testimony of the officers, the Court below ruled against the defendant, stating—"whatever discrepancy exists, if any, it goes to the weight to be afforded the Exhibit and not to the admission of it."

The cocaine exhibit was placed in a sealed manila envelope, with Officer Crowley's signature on it indicating that he had received it from Officer Leighton on August 26, 1977 and had turned it over to Doctor James Young, the State's chemist, on September 7, 1977. Dr. Young, so he testified, also signed the sealed envelope at the time he received it from Officer Crowley. Even though Crowley claimed that he had placed the exhibit in, and taken it out of the safe under the supervision of Officer Stevens, nothing to indicate that particular fact was entered upon the manila envelope. Dr. Young testified to receiving the exhibit from Officer Crowley in its sealed condition. Notwithstanding the conflict in the testimony of Crowley and Stevens respecting the keeping of the cocaine exhibit in the DSI safe, the evidence as a whole provides a

reasonable assurance that the exhibit which Crowley received from Leighton was the same which he delivered to Dr. Young and in the same condition. It would be bare speculation to infer any tampering with the exhibit under the circumstances of this case.

■ As stated in *State v. Thibodeau,* Me., 353 A.2d 595, at 603 (1976): "[I]n any event, the law does not require that the chain of custody be so cast as to eliminate all possibility of tampering with the exhibit involved. For admission purposes, it suffices if the custodial evidence establishes by the fair preponderance of the evidence rule that it is more probable than not that the object is the one connected with the case," even though we are dealing here with a narcotic substance.

■ The particular conflict in the testimony of the State's witnesses was for the jury to settle and for their consideration in evaluating the probative value of the exhibit. The jury could very well have accepted the testimony of Officer Crowley as true, discounting the factual accuracy of the testimony of Officer Stevens respecting a matter in which he had no active participation, especially where no testimony was introduced showing that evidence stored at the DSI headquarters could not get in, nor be removed from, the safe without the recorded signatures of the giving and receiving officers. The discrepancy did not preclude the jury from finding the defendant guilty beyond a reasonable doubt of trafficking in cocaine, a schedule W drug, in violation of 17–A M.R.S.A. § 1103.

■ It is peculiarly the province of the jury to reconcile conflicting testimony, to evaluate its relative weight, and to determine what part of the evidence is credible and worthy of belief. *State v. Devoe,* Me., 301 A.2d 541 (1973); *State v. Fournier,* Me., 267 A.2d 638 (1970); *State v. Ladd,* 159 Me. 431, 193 A.2d 914 (1963).

The defendant's second point of appeal is without merit and the entry will be

Appeal denied.

Judgments affirmed.

POMEROY and DELAHANTY, JJ., did not sit.