LEIGH M. CLARK, Retired Circuit Judge.
This case on appeal consists of three consolidated appeals by Porter Giles, Jr., from convictions in each of three separate cases of a violation of the Alabama Controlled Substances Act. One of the cases (No. 79-708) was tried on a two-count indictment charging possession of phencyclidine in one county and marijuana in the other; there was a jury verdict finding defendant guilty under each count, and the court sentenced him to imprisonment for ten years; the verdict was returned and judgment of conviction was rendered on August 24, 1979, but the sentence was not pronounced until September 10, 1979, at which time defendant’s petition for probation was continued to September 24, 1979. On September 10, 1979, defendant entered a plea of guilty in each of the other two cases (79-706 and 79-707), and the court sentenced him in each of said cases to imprisonment for ten years, the sentence in each to run concurrently with the sentence in the case which was tried (79-708), and defendant’s petition for probation in each of said cases was continued to September 24 for determination. On September 24, 1979, the court in each of the three cases denied defendant’s petition for probation. On October 1, 1979, defendant took an appeal in each case. He was represented on arraignment in each case, on the trial of Case No. 79-708, and in all proceedings in the other cases, by retained counsel. On appeal in each of the cases, as an indigent, he is represented by appointed counsel.
A major assertion of error, which in most respects is a pivotal one, is to the effect that the court should not have admitted in evidence some .items that appellant says were obtained in violation of defendant’s right to security in his “houses, papers, and effects, against unreasonable searches and seizures.” He first presented the question by a written pretrial motion to suppress which was heard before commencement of the trial in case No. 79-708. A motion to suppress was also filed in each of the other cases, but there is nothing in the record before us to indicate that either of them was ever submitted. The court denied defendant’s motion to suppress in No. 79-708. We now consider appellant’s contention that this particular ruling of the court was erroneous.
The motion to suppress was expressly directed to the following:
“Any and .all contraband or personal property obtained from the Defendant, Marijuana, and Phencyclidine.”
The grounds asserted were the following:
“1. Said Contraband was not obtained by the officers as a result of a lawful arrest.
*1179 “2. Said contraband was not obtained on the basis of a search warrant issued prior thereto.
“3. Said search was an unlawful, war-rantless search not incident to a lawful arrest, therefore rendering said alleged contraband inadmissible as a matter of law.”
On the hearing of the motion to suppress, testimony of two officers showed that a search warrant had been obtained on affidavit of one of the officers and appearance by him before a judge of the District Court 15th Judicial Circuit, Montgomery County, commanding an immediate search on the person and premises of Porter Giles Alias, 2939 Maryland Drive, Montgomery, Montgomery County, Alabama, for marijuana. According to the testimony of the officers, who were the only witnesses on the hearing on the motion to suppress, they and other officers went to the home of defendant at 2939 Maryland Drive on February 8, 1979, at 1:45 P.M. and there executed the search warrant. They first knocked on the front door and nobody responded; there was some noise or movement in the house which they afterwards learned was a dog; they went to the back door, opened the door and entered. No person was in the house at the time. After searching the house they left a copy of the search warrant therein. They found and took possession of a large amount of marijuana that was located at various places in the house. They also took possession of a safe that they afterwards took to a locksmith who opened it by drilling. There was some marijuana, as well as some money and jewelry in the safe.
On the trial, the same two officers who testified on the hearing on the motion to suppress again testified as to the search of the house and as to what was found therein. Other officers also testified as to the search and the fruits thereof. There was expert testimony showing that the contents of many of the bags found in the house consisted of marijuana. The only other identifiable controlled substance was that of phencyclidine contained in eight or nine packets that were found in the refrigerator in the house, which were offered m evidence without objection as State’s Exhibit No. 2.
After the State had rested on the trial of the case, defendant took the stand in his own behalf. He testified that he lived at 2939 Maryland Drive, where he had lived for the last ten years; a woman who had two children fourteen and nine years of age also lived in the house in the room with defendant; defendant’s son, seventeen years of age, lived in a back bedroom of the house. Defendant said he was disabled and received a disability check each month in the sum of $535.00.
According to further testimony of defendant, which was largely developed on direct examination of him by his counsel, he owned the safe that was in the house, it having been left to him by his father. The last time he had been in the safe was about two days before the execution of the search warrant. He kept his money and his watches in the safe. He said that he did not keep any drugs in the safe, that he had no knowledge of any drugs anywhere in the house. According to him, he did not engage in the selling of drugs and he knew nothing about any drugs being in his home on February 8, 1979. He said that there were several others that had a combination to the safe, including two brothers, his son and his sister.
Although appellant does not concede that any of the drugs found in the house the day of the search were admissible in evidence, he, on appeal specially insists that the seizure of the safe and having it opened by a locksmith and the contents thereof taken into possession by the officers constituted unconstitutional search and seizure. Neither party presents any definite authority on this particular issue. It is clearly a more serious issue than any issue as to the seizure of marijuana, phencyclidine, drug paraphernalia and several others items in the house that were not in the safe. The contention of defendant as made on his motion to suppress fails utterly as to such items. It does not necessarily follow, however, that the search warrant that was be *1180 ing executed by the officers authorized them to take a locked safe out of the house and have it opened by a locksmith and the contents thereof,- including the marijuana therein, seized. We would attempt to determine that issue at this time but for the fact that it appears that the specific issue was not presented to the trial court. As indicated above, the motion to suppress did not contain any special reference to the marijuana in the safe or the other contents thereof. The motion was grounded upon a claim that there was no warrant to search the house. There was a valid warrant to do so.
During the trial, there were repeated references to the search of the safe and the contents thereof, but we do not find that any solid objections, based on any claim of an unconstitutional search and seizure, were ever made to testimony relative to what was found in the safe. On the other hand, defendant was as aggressive as the State, if not more so, in presenting such evidence, either by defendant as a witness or on cross-examination of witnesses for the State. It is clear that considerable evidence relative to the safe and its contents was received in evidence without any objection whatever by defendant. The closest to a definite objection by defendant to the introduction of such evidence was in the latter part of the trial when the bag of marijuana found in the safe, constituting State’s Exhibit No. 5, was offered in evidence, at which time the following occurred:
“Q. All right. I’ll show you this item that’s marked as State’s Exhibit No. 14, excuse me, State’s Exhibit No. 5, and ask you if you recognize it. If you’ll take it and look at it, if you recognize what it appears to be?
“A. Yes, sir.
“Q. What does it appear to be?
“A. It appears to be the same marijuana and bag that was taken from the safe. “Q. Did you take these items from the safe?
“A. Yes, sir.
“Q. And after you took them from the safe, State’s Exhibit No. 11 [sic], what did you do with them?
“A. I gave them to Property Officer Charles Baugh, Charlie Braughum with the A.B.C.
“Q. Is it Baugh or Baughum?
“A. I don’t remember.
“Q. Do you see the gentleman here in Court, today?
“A. Yes.
“MR. BELL: Your Honor, at this time the State would offer in evidence the exhibit marked State’s Exhibit No. 5. “MR. PRICE: We object, Your Honor. May I reiterate the comments made on the motion earlier?
“THE COURT: All right.
“MR. PRICE: To support my objection earlier—
“THE COURT: It’s in.
“(Whereupon, marijuana, marked for identification State’s Exhibit No. 5, was offered and received into evidence.)”
No ruling of the trial court was ever invoked on the specific issue now raised, whether the bag of marijuana found in the safe was the product of an unconstitutional search and seizure and for that reason it was inadmissible in evidence. It is not within the province of this Court to determine the legality of the action of the officers in finding and taking possession of the marijuana in the safe in the absence of a challenge, by appropriate procedure or objection in the trial court, of the legality of the action of said officers. Woodward v. State, 52 Ala.App. 524, 294 So.2d 772 (1974); Hegmon v. State, 50 Ala.App. 486, 280 So.2d 192 (1973). Strikingly similar, and not materially distinguishable, in the facts as to rulings invoked in the trial court, are those found in State v. Desjardins, Me., 401 A.2d 165, 168 (1979), in which it was said:
“Absent, however, the presentation of this particular issue to the trial court for adjudication, either at the pre-trial hearing on the motion to suppress or at the trial itself, the defendant’s present theory of inadmissibility of the evidence, if advanced for the first time before the ap *1181 pellate tribunal, would come too late. It is a well established principle of appellate procedure in criminal proceedings that a foundation must be laid in the trial court for review of the claim of error by the appellate court. State v. Inman, Me., 350 A.2d 582 (1976); State v. Pike, Me., 306 A.2d 145 (1973); State v. Wheeler, Me., 252 A.2d 455 (1969).”
In Desjardins, there was an absence from the record of the motion to suppress, which is in the record in the instant case, but the court therein made it clear that if the motion to suppress had been in the record on appeal and had contained therein “grounds for relief in the broad and literal conclusory terms of the rule, that the marijuana and related drug paraphernalia were ‘illegally seized without a warrant,’ such, without more, would be insufficient to raise the question presently pressed before this Court . .” 401 A.2d at 169. The court then cited Rule 41(e), M.R.Crim.P., providing that “the justice [hearing the suppression motion] shall receive evidence on any issue of fact necessary to the decision of the motion.” and stated:
“. . This language implies that the suppression movant must articulate in his motion with sufficient particularity the specific reason on which he bases his claim that the seizure without warrant was illegal, so that the court will recognize the issue to be decided. See Cohen v. United States, 378 F.2d 751 (9th Cir. 1967), cert. denied, 389 U.S. 897, 88 S.Ct. 217,19 L.Ed.2d 215; United States v. One 1965 Buick, 392 F.2d 672 (6th Cir. 1968).”
It should be stated that it appears that failure to raise on the trial the precise issue as to the admissibility in evidence of the marijuana found in the safe that is raised on appeal does not constitute a mistake on the part of defendant or his counsel. On the contrary, it is obvious that there would have been little, if anything, to gain by an exclusion from the consideration of the jury of the existence of marijuana in the safe. Defendant’s counsel, realizing the mountain of evidence against defendant by the large quantities of marijuana and drug paraphernalia found in various places in the house, was working to the best interest of defendant in attempting to capitalize upon what was found in the safe, to which several, in addition to defendant, had the combination and ready access. It may have been a two-edged sword, but there is no basis for the conclusion that whatever edge there was against defendant was any sharper than the edge against the State.
Appellant strenuously insists that the evidence was not sufficient to support his conviction. In asserting a sound principle that “where the Defendant is in nonexclusive possession of premises on which drugs are found it cannot be inferred that he knew of the presence of such drugs and had control of them, unless there are other incriminating statements or circumstances tending to buttress such an inference,” he relies upon authorities from other jurisdictions, which we have considered.
In Delgado v. United States, 327 F.2d 641 (9th Cir. 1964) nine marijuana cigarettes were found in a drawer of a night stand situated at the foot of the common bed in the bedroom of two defendants, each the common law spouse of the other. A small quantity of loose marijuana in a folded newspaper was also found. There was no evidence whatever that pointed the finger of guilt more directly to the one rather than the other of the defendants. There was hardly enough marijuana to justify a conclusion that both were guilty. Delgado is an entirely different kind of case from the instant case, in which there was enough marijuana and phencyclidine for a while for defendant, his seventeen-year-old son, and his common law wife, as well as for a large number of outsiders.
Appellant says that the instant case is analogous to Feltes v. People, 178 Colo. 409, 498 P.2d 1128 (1972), wherein a large number of persons were in a room in a chalet in which officers, acting pursuant to a search warrant, discovered marijuana, hashish, and narcotics paraphernalia in various locations. The Supreme Court of Colorado reversed the convictions of two defendants who were occupying a bedroom in which a box con *1182 taining marijuana debris in the dresser drawer was found. Convictions of the other defendants were affirmed. Feltes is not analogous, in our opinion.
Baker v. State, 127 Ga.App. 403, 194 S.E.2d 122 (1972) is not helpful to appellant. It held that the presumption that the head of a household possesses contraband found on premises is not applicable where others, not members of defendant’s household, but living there, have equal access. It cannot be correctly said that defendant’s seventeen-year-old son was not a member of his household; nor can it be correctly said that his common law wife and her fourteen-year-old and nine-year-old children were not members of his household.
In distinguishing between cases which have held there was a probability that persons other than the defendant were the possessors of the controlled substance involved and cases to the contrary, the line is clearly drawn by Judge DeCarlo in Smith v. State, Ala.Cr.App., 351 So.2d 668, distinguishing that case holding the evidence sufficient from other cases in which the evidence was held insufficient, by reason of the fact that in Smith the contraband was found in appellant’s residence. In Williams v. State, Ala.Cr.App., 340 So.2d 1144, as well as in Cook v. State, Ala.Cr.App., 341 So.2d 183, the prohibited substance was not found in the residence of appellant.
Evidence in the instant case showed that the usual utility services for the residence were in the name of appellant. All of the circumstances, including appellant’s ten-year residence at the place and his relationship with others who occupied the residence, definitely point to him as the person having dominion over the premises. His blanket denial of any knowledge of the presence of controlled substances and apparent sales thereof was understandably incredible to the jury.
Appellant contends that there was error in the court’s permitting the introduction in evidence of some marijuana that was not in the residence of defendant at the time it was searched. Such marijuana identified as State’s Exhibit 13 was found in a 1972 Cadillac automobile being driven by defendant in the vicinity of the residence about five hours after the search, at which time defendant was arrested for possession of the phencyclidine and marijuana found in his residence. On the motion to suppress, there was no evidence pertaining to the marijuana found in the automobile. No evidence was offered on the trial with reference to such marijuana until defendant had taken the stand and had denied knowledge of the presence of marijuana and marijuana paraphernalia in his house, including a marijuana pipe found in the dresser drawer of the bedroom he occupied, and any connection with traffic in controlled substances. The following shows the first question as to the marijuana in the Cadillac:
“Q. Isn’t it a fact Mr. Giles that when they arrested you that you had some marijuana in your car?
“MR. PRICE: I object to that, Your Hon- or. It’s prejudicial, irrelevant, it has no appropriate value plus it’s prejudicial to the defendant and being brought open in plain view in front of the jury. Judge, may we approach the bench? “(Whereupon, there was an off-the-record discussion at the bench between Mr. Bell and Mr. Price and the Court.)
“THE COURT: You all step into the Jury Room for a while so I can see what the lawyers have to say.
“(Whereupon, the Jury retired to the Jury Room, and the following occurred outside the presence of the Jury.)
“MR. PRICE: Your Honor, that is a separate and distinct charge against the Defendant which he is indicted for and he has not been convicted on it. He has not established any particular time with reference to how soon after or whether or not it is upon hearsay it is prejudicial to the Defendant, Your Honor.
“MR. BELL: Judge, I can bring Deputy Elijah in here and he’ll testify that this man was arrested on the same day prior to 7:30 at night that when he arrested the Defendant that they had an arrest warrant for him and he had probable cause to *1183 believe that there was some more dope in his car and they looked in his trunk and there was a sack containing a pound and a half of marijuana in there and he has testified on the stand that he didn’t have any marijuana and never had any.
“THE COURT: I think that’s a—
“MR. PRICE: Judge, I think he would have to show that it was a continued investigation which it was not or that it was part of res-gestae and I submit that is not enough.
“THE COURT: How about a pattern? “MR. PRICE: Well, he’s going to have to establish that, I believe who the car belonged to, who had been in the car prior to Mr. Giles, driving the car—
“THE COURT: He just made the statement that he owned a 1972, Cadillac. “MR. PRICE: I think the evidence would show that he does not own that car, Judge, he was just driving that car. “THE COURT: I believe he testified to Mr. Bell about the Cadillac, I thought you asked him if he had one and he said he did. What did he say?
“MR. BELL: Judge, it would have to be read back. I thought he said that he had a ’72 Cadillac.
“THE COURT: I don’t need it read back. “MR. PRICE: Mr. Williams, Larry Williams, has investigated and knows that that ear belonged to his brother, Your Honor, the car does not belong to Mr. Giles.
“THE COURT: He was in possession of it and was driving it at the time. I think that is admissible.
“MR. PRICE: Judge, that was some five hours after the search alone.
“THE COURT: That’s admissible. Bring the Jury back.”
Thereafter, defendant was further cross-examined as to the Cadillac. He said he had borrowed it from his brother and had had it about a month and a half and that he was “going to keep it” as “long as I had to use it.” He denied having any knowledge of the marijuana that the officers testified in rebuttal was in the trunk of the Cadillac at the time. There were no objections to any questions asked defendant on such cross-examination. After redirect examination of defendant, defendant rested. We have quoted above objections of defendant in their entirety as to questions asked defendant relative to the 1972 Cadillac and the marijuana therein. None of the grounds stated is valid, except perhaps that which is contained in the statement of defendant’s counsel, “That is a separate and distinct charge against the Defendant which he is indicted for and he has not been convicted on it.” It appears, however, that the quoted statement was made mistakenly, for thereafter in arguing the question as to the admissibility of the evidence of the marijuana found in the Cadillac, counsel for defendant said:
“I object to any further questions along this line, I understand, Your Honor ruled on the first objection but I don’t contend that we are getting into a matter that involved perhaps a second charge of something like that and that we are getting further than I think, Your Honor, intended. [Emphasis supplied].”
Appellant does not now contend that possession of the marijuana in the 1972 Cadillac was a part of the marijuana that defendant was charged with possessing in some other case, particularly in the two other cases (79-706 and 79-707).
The State called two witnesses on rebuttal to show that marijuana was found in the 1972 Cadillac after defendant was arrested. The first witness, Officer Elijah, testified on direct examination, as to which there was no objection by defendant, that they found in the trunk of the Cadillac “a brown paper sack and approximately two pounds of substance that we felt like was marijuana” and that they then took defendant “and the car and the marijuana to the jail.” The witness said that he opened the trunk with a key to the trunk during the testimony of the witness. Defendant's counsel made the point that the particular automobile did not have a key to its trunk but that the trunk door was opened by means of a trunk release in the glove compartment of the automobile. The State then called Officer Lar *1184 ry Williams who was also present at the time of the defendant’s arrest. Officer Williams testified that the trunk was not opened by a key but by a trunk release in the glove compartment of the automobile and that this was not done until defendant and the automobile had been taken to the jail and thereafter, out of the presence of defendant, the marijuana, constituting State’s Exhibit No. 13, sworn to be marijuana by an expert witness, was found.
In objecting to testimony as to State’s Exhibit No. 13, defendant’s counsel was shown to be absolutely correct in contending that it was not correct that the trunk of the automobile was opened by a key, and defendant was right in his testimony that the trunk was not opened and marijuana therein found in his presence, but we find nothing in the objections made by defendant that constitutes a valid ground of objection to the admission in evidence of the testimony relative to the marijuana found in the trunk of the automobile. No error, prejudicial to defendant, resulted from its admission in evidence.
We find no error in the record of the trial and proceedings in case No. 79-708 prejudicial to appellant, and the judgment appealed from therein should be affirmed.
CASES NO. 79-706 AND 79-707
In these cases, as shown hereinabove, defendant entered pleas of guilty. The record shows affirmatively that every precaution was taken to safeguard the defendant against any infringement of his constitutional rights in entering such pleas. It shows affirmatively that before the court accepted defendant’s plea of guilt, he was fully informed by the court of all of his pertinent constitutional rights and that he and his attorney acknowledged in writing receipt of such information and that they were completely satisfied that he knew what he was doing and that he was entering the guilty plea knowingly, voluntarily and intelligently. There is no contention to the contrary. In fact, there is no contention whatever on this appeal that in any way challenges the validity of the judgment and conviction in either case No. 79-706 or case No. 79-707. The judgment of the trial court in each of said cases should be affirmed.
The foregoing opinion was prepared by Retired Circuit Judge LEIGH M. CLARK, serving as a judge of this Court under the provisions of § 6.10 of the Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the Court. The judgment of the trial court in each of the cases consolidated on this appeal (Circuit Court Cases 79-706, 79-707 and 79-708) is hereby
AFFIRMED.
HARRIS, P. J., and TYSON, BOOKOUT and BOWEN, JJ., concur.
DeCARLO, J., not sitting.