STATE OF MAINE                    RECEIVED AND FILED          SUPERIOR COURT
KENNEBEC, ss                      2009 NOV 18 P 3: 24          CRIMINAL ACTION
                                  CLERK OF COURTS              DOCKET NO. CR-06-937

STATE OF MAINE

v.                                                             ORDER ON MOTIONS
                                                               TO SUPPRESS

THOMAS MITCHELL,

        Defendant

        Before the court are three motions to suppress, a motion to dismiss, a motion for

discovery and bill of particulars, a motion to inspect and test items of tangible evidence,

and a motion to file additional motions filed by the defendant.

FINDINGS

        Judith Flagg died on 1/6/83 from multiple stab wounds to the trunk of her body

with hemorrhaging. The defendant was indicted for her murder on 9/8/06. The Maine

State Police investigate unsolved homicides as time permits in their very busy

schedules.

        Maine State Police Detective Jason Richards was assigned to investigate the Flagg

homicide. Based on his review of the file and discussions with Ted Flagg, Judy Flagg's

husband, Detective Richards learned that footprints were found in the snow at the

Flagg residence on the day of the homicide. The footprints were photographed and

casts were made.

        CID II Detective Richard Cook was assigned as the primary investigator to the

Flagg homicide. During the execution of a search warrant on 7/3/84, he interviewed

the defendant's aunt, Eleanor Foley, who lived in South Portland with the defendant's

1

mother, Dorothy Mitchell, and the defendant. (State's Ex. 25.) Ms. Foley died in December 2000. (Def.'s Ex. 1[1] (death certificate).) Ms. Foley stated that she had a handwritten account of the defendant's activities on the date of the murder. She did not produce the notebook of her account to Detective Cook. She stated that she based her account on what the defendant told her; she was not with him. (Cf. Def.'s Ex. 2[2] (account of 1/6/83).) She kept the account because the defendant had had problems previously with the police. The defendant's mother told Detective Cook that the defendant did not know about Ms. Foley's account. Detective Cook also seized the defendant's shoes from the residence. (State's Ex. 22.)

Major Timothy Doyle interviewed Ms. Foley on 2/21/91. (State's Ex. 26.) He asked to look at her notes regarding the defendant's activities. She said she had been instructed by defense counsel to discard the notes and any items.[3] Ms. Foley told Major Doyle that she was with the defendant on the day of the homicide and described their various activities.

In 1983, Ron Eccles served as director of the Maine State Police crime lab, which was located in the basement of what was referred to as headquarters on Hospital Street in Augusta. He attended the autopsy of Judy Flagg on 1/7/83 and took photographs. On 1/7/83, the medical examiner, Dr. Roy, gave fingernail clippings from Judy Flagg's hand and swabs from Judy Flagg's mouth and other body cavities to Mr. Eccles. (State's Exs. 2, 3, 4; Def.'s Ex. 1 (Dr. Roy report).) These items remained in Mr. Eccles's possession until 1/11/83, when he placed them in a box and sent the box to the FBI lab

---

[1] The record contains two defendant's exhibit 1.
[2] The record contains two defendant's exhibit 2.
[3] By agreement, on 6/16/08, the State submitted the Foley notes dated 1/1/83 through 5/31/83. (State's Ex. 27.) These notes are written in the first person singular, and document the defendant's activities that took place when Ms. Foley was not present. (See, e.g., Note of 2/16/83.)

with a request for certain examinations to be performed. (State's Ex. 1.[4]) Each item of evidence was separately packaged and labeled. Every precaution was taken to keep items separate and prevent cross-contamination.

Page two of State's exhibit 5 lists the items sent to the FBI. (State's Ex. 5.) The list includes the clippings and swabs. The FBI report of the examinations, dated 3/28/83, lists the clippings and swabs. (State's Ex. 6.)

The items were returned to Mr. Eccles in the same box with an invoice. (State's Ex. 7.) He examined the box to determine that the items sent had been returned. The box sent to the FBI and the box returned by the FBI did not contain items that belonged to the defendant. Mr. Eccles placed the box in the evidence locker at the crime lab, which consisted of a large room with shelves in the basement of headquarters. On 4/25/83, Mr. Eccles submitted some items from the box for reexamination. The clippings and swabs were not resubmitted. (Def.'s Ex. 3.)

Based on memos, the evidence remained at the crime lab. (State's Exs. 8, 8A, 10, 10A, 11, 12, 12A, 13, 13A, 14, 15, 15A, 16, 16A, 17, 17A.) On 12/21/98, then Lieutenant Timothy Doyle was involved with moving evidence from the crime lab to a Maine State Police CID II storage facility. (State's Ex. 18.) On 9/20/00, two boxes were turned over to Forrest Crilly of the Maine State Police, then assigned to CID II. The boxes were re-inventoried on 9/20/00 by Detective Crilly and Sergeant Nichols and taken to the crime lab. One box was returned to the CID II locked evidence locker because it did not contain DNA evidence. The boxes were relabeled. State's exhibit 1 became SFC #1.

---

[4] During various times, there were different numbers of boxes associated with this case. The records show that on 6/29/98, there were five boxes associated with the Flagg homicide. On 2/21/98, there were seven boxes. On 1/21/99, there were five boxes. On 3/17/05, there were four boxes. Some of these boxes related to the homicide of Everett Pease, which also occurred in Fayette; all the boxes were labeled "Fayette." On 3/17/05, the four boxes were signed out to Detective Jason Richards and taken to the crime lab.

(State's Ex. 19.)  Detective Crilly found no items connected to the defendant in State's exhibit 1.  State's exhibit 1 remained at the crime lab.  The fact that evidence was stored under varying conditions does not mean that the evidence was compromised.

Brandi Caron, a forensic chemist at the crime lab, first heard about this case in 2000.  She began working on the case in 2003 and tried to reconstruct the entire file.  Ms. Caron opened State's exhibit 1 in March 2005.  She inventoried the contents at that time.  The markings on the box indicate the box had been sent back to the crime lab from the FBI.  The box had been at the crime lab since 2000.

Each time she entered the boxes, she made a notation with dates.  There are numerous layers of tape seals on the box.  A smaller box contained all of the slides described in the FBI reports.  Ms. Caron had repackaged those items into a smaller box labeled BLC-6.  On 2/28/06, she also found in State's exhibit 1 the pillboxes containing the fingernail clippings.  (State's Exs. 2, 3.)  During her investigation, she found no reports or records that the fingernail clippings were examined again after the FBI examined them in 1983.

She also found test tubes with swabs in State's exhibit 1.  (State's Ex. 4.)  During her investigation, she found no record that the swab was sent anywhere for examination after it was sent to the FBI in 1983.  Ms. Caron performed an examination of the swab and found a combination of mouth and sperm cells.  She prepared a cell pellet of the oral swab and gave it in hand on 3/8/06 to Cathy MacMillan, DNA analyst in the Forensic Biology Section of the crime lab.

In May 2006, Ms. Caron performed testing on the clippings.  She also prepared swabs of the clippings and submitted the swabs and the clippings to Cathy MacMillan

for DNA analysis on 5/19/06. During her examination, the evidence was either under her lab bench or in the works-in-progress locker.

A box containing footwear casts made from the defendant's shoes in January 1983 was brought to the crime lab by Detective Richards in 3/05. Ms. Caron opened the box and found the casts had broken. She repackaged the casts and submitted them to Alicia Wilcox, employed by the crime lab as a latent print examiner. No expert comparisons had been done with the casts prior to the breakage.

Three blood samples were taken from the defendant: one in 1984; one CODIS sample taken after 1985; and one sample taken just prior to this indictment. Throughout Ms. Caron's handling of the evidence in this case, she found no items that came from the defendant. His items were separately packaged. Although page 3 of State's exhibit 19 provides that the box contains "blood sample ?", the defendant's blood is not contained in State's exhibit 1. His blood was packaged in box BLC #5. Ms. Caron never handled the defendant's blood in connection with her work on the fingernail clippings and mouth swab.

Catherine MacMillan, a crime lab DNA analyst, received the cell pellet from Ms. Caron but not the swab. Ms. MacMillan performed a differential extraction on the pellet. She later sent the sperm fraction from the swab to Orchid Cellmark in Dallas for DNA testing, known as Y-STR testing. Chad Flagg, Judith Flagg's son, was excluded, and the defendant could not be excluded, as a contributor of the DNA profile found.

Ms. MacMillan also received a swabbing of the fingernail clippings on 5/19/06 from Ms. Caron. Ms. MacMillan did not receive the clippings. She performed DNA testing on the clippings according to standard procedure. The DNA profile from the right hand clippings matched the known DNA profile of the defendant to identity. The earliest she could have performed the DNA tests performed in this case was 2000, based

on the development of DNA testing. The genetic analyzers are more sensitive currently than ten years ago.

During this work, Ms. MacMillan was not working on any biological material that belonged to the defendant. She handled the defendant's dry blood on a different day and in a different area of the lab. The DNA profile from the clippings was completed before she began her work on the bloodstain card of the defendant. Nothing in the records suggests that the person who previously attempted a DNA extraction on the defendant's blood samples contaminated the clippings with the defendant's blood.

Alicia Wilcox, a crime lab latent print examiner, is trained in, among other things, impression evidence. Ms. Wilcox received three footwear casts, which were in pieces, from Ms. Caron on 4/7/05. (State's Ex. 20, 21.) The casts have remained in her custody since that date.

According to Ms. Wilcox, the material used for the casts, prill sulfur, was so thin and brittle, that the casts could have broken within a week after they were made. Ms. Wilcox reassembled the casts in accordance with her training. She had performed reconstructions in the past but this case involved her first reconstruction of prill sulfur casts. She did not consider the reconstruction difficult.

Photographs of the casts were taken a day or two after the homicide but she did not see the photographs of the casts until after the reassembly. She compared the reconstructed cast A with the photograph of cast A; they were visually the same. After reconstruction, she concluded that the heel area of cast A was made in the same mold and was the same size as the left loafer seized from the defendant.

MOTION TO INSPECT AND TEST ITEMS OF TANGIBLE EVIDENCE

Motion granted at the motion hearing without objection from the State.

MOTION TO DISMISS

The indictment, dated 9/8/06, provides a date of the offense of murder of 1/6/83. The defendant argues that he "has been irreversibly and unduly prejudiced by the lengthy pre-indictment delay" and his due process rights have been violated. In particular, he argues that the State made no effort to compare shoes taken from the defendant's residence with casts made; samples relied on by the State and in the State's possession for more than twenty years were not used for DNA analysis; all samples have been used and the defendant has no opportunity for a retest of the samples by his experts; and an alibi witness has died.

Evidence

The defendant has failed to make the necessary showing with regard to his arguments about the State's handling of the evidence. See State v. Cyr, 588 A.2d 753, 755 n.4 (Me. 1991). In particular, there is no showing that evidence not preserved had exculpatory value and there is no demonstration of bad faith on the part of the State. Id. Further, Ms. Wilcox was able to reconstruct the footwear casts properly to allow a comparison of the casts with the defendant's footwear.

Delay

The sophisticated DNA testing performed in this case was not available until 2000. The Maine State Police devote time to unsolved homicides when schedules permit. Once the evidence was analyzed and eye witness testimony confirmed,[5] the State sought an indictment. See United States v. Lovasco, 431 U.S. 783, 795 (1977) (prosecutors should refuse to seek indictments until completely satisfied the case

7

should be prosecuted and guilt can be established beyond a reasonable doubt); Cyr, 588 A.2d at 756 (prosecutors may, and indeed should, delay seeking an indictment until they are satisfied the case should be prosecuted); see also People v. Nelson, 185 P.3d 49, 59 (Cal. 2008) (investigative delay different from governmental delay used solely to gain tactical advantage over accused).

The Maine State Police did interview Ms. Foley on two occasions. If Ms. Foley were available to testify at trial, depending on which version of events she presented at trial, her testimony would be of questionable admissibility or, if admitted, subject to impeachment.

Under the Lovasco standard, applied in Maine, the defendant must show "actual and justifiable prejudice" resulting from the delay. The court then inquires as to the reasons for the delay to determine whether the prejudice remains unjustified. Cyr, 588 A.2d at 756; see Lovasco, 431 U.S. at 795. Assuming that the defendant has established substantial prejudice to his right to a fair trial based on the unavailability of Ms. Foley, he must also establish that the State "engaged in intentional delay for tactical reasons." United States v. Miller, 484 F. Supp. 2d 154, 157 (D. Me. 2007) (State never interviewed witness with potentially exculpatory evidence). The defendant has not made that showing on this record. Compelling this defendant to stand trial after pre-indictment delay does not violate "fundamental conceptions of justice." Lovasco, 431 U.S. at 790.

MOTION FOR DISCOVERY AND BILL OF PARTICULARS

Based on the large amount of discovery in this case, the defendant understandably requests "the template . . . as to where the state wants to go." In particular, the defendant wants the evidence the State plans to present and the names of the witnesses the State plans to call.

---

[5] Eloise Ault and Thomas Roche testified at the Harnish hearing.

The court stated on the record at the hearing that these requests do not result in the filing of a bill of particulars. "The purpose of a bill of particulars is to enable the defendant to prepare an adequate defense, to avoid prejudicial surprise at trial, and to establish a record upon which to plead double jeopardy if necessary." State v. Ardolino, 1997 ME 141, ¶ 5, 697 A.2d 73, 76 (quoting State v. Cote, 444 A.2d 34, 36 (Me. 1982)). It is not the function of a bill of particulars to detail the evidence on which the State will rely at trail or to disclose the State's trial theory. Id.

The State has represented that it will be forthright with defense counsel about how the State intends to proceed as the trial nears. Witness lists and exhibit lists should be exchanged as soon as practicable.

MOTION TO SUPPRESS DNA TESTING RESULTS FROM VICTIM'S FINGERNAIL CLIPPINGS

MOTION TO SUPPRESS DNA TESTING RESULTS FROM ORAL SWAB TAKEN FROM VICTIM

MOTION TO SUPPRESS RESULTS OF EXAMINATIONS OF FOOTWEAR AND FOOTWEAR COMPARISONS

In support of the DNA motions, the defendant argues that: (1) the location, security, and integrity of the evidence has not been established or disclosed by the State; (2) the chain of custody is deficient; (3) the evidence likely has been corrupted, contaminated, degraded, or tampered with; (4) the evidence from the victim and the defendant has been cross-contaminated; (5) the testing procedures used were not performed according to appropriate standards and controls; and (6) admission of the evidence and expert opinions would violate Rules 401, 403, and 901.

In support of the footwear cast motion, the defendant argues that: (1) the chain of custody is insufficient; (2) the evidence has been corrupted because the casts broke; (3) the forensic scientist had never before constructed casts for comparison purposes; (4)

9

the testing procedures used were not performed according to appropriate standards and controls; (5) admission of evidence and expert opinions would violate Rules 401, 403, and 901.[6]

This record does not support the defendant's arguments. The evidence was under the control of the Maine State Police, either at the crime lab or the CID II facility, except when the evidence was sent to the FBI for testing. Sending the evidence to the FBI does not render the evidence inadmissible. State v. Lafferty, 309 A.2d 647, 657-58 (Me. 1973) (no showing of break in continuity unless use of the mails can be so characterized).

On this record, there was no contamination of the Flagg and the defendant's samples and nothing has occurred to render the evidence unreliable. Ms. Wilcox reconstructed the casts appropriately, as confirmed by the photographs. See State v. Desjardins, 401 A.2d 165, 171 (Me. 1979) (suffices if custodial evidence established by a preponderance of the evidence that the object is the one connected to case). The testing was performed by qualified experts according to standard procedures and training.

MOTION TO FILE ADDITIONAL MOTIONS

Court defers ruling on this motion at defendant's request.

The entry is

> The Defendant's Motion to Dismiss, Motion for Discovery and Bill of Particulars, and three Motions to Suppress are DENIED.
>
> The Defendant's Motion to Inspect and Test Items of Tangible Evidence is GRANTED.

---

[6] These bases are outlined in the motions to suppress. In his memorandum, the defendant has reduced the number of grounds on which he bases his motions to inadequate chain of custody; corruption, contamination, or degradation of evidence; and, for the casts, that the evidence is unreliable because of destruction of the casts and that the State had the opportunity to make comparisons before the casts broke. (Def.'s Mem. at 1.)

The Defendant's Motion to File Additional Motions is DEFERRED.

Date: November 18, 2008

Nancy Mills
Justice, Superior Court

State v. Mitchell
Kennebec CR-06-937

11

STATE OF MAINE                                    SUPERIOR COURT
  vs                                             KENNEBEC, ss.
THOMAS H MITCHELL, JR                            Docket No  AUGSC-CR-2006-00937

                                    **DOCKET RECORD**

DOB: 02/21/1957
Attorney: JAMES STRONG                  State's Attorney: WILLIAM STOKES
          PO BOX 56
          THOMASTON ME 04861
          RETAINED 09/20/2006

Filing Document: INDICTMENT              Major Case Type: HOMICIDE
Filing Date: 09/08/2006

## Charge(s)

1   MURDER                                      **01/06/1983 KENNEBEC**
Seq 621   17-A  201(1)(A)            **Class M**


## Docket Events:

09/11/2006 FILING DOCUMENT -  INDICTMENT FILED ON 09/08/2006

           TRANSFER -  BAIL AND PLEADING GRANTED ON 09/08/2006

           TRANSFER -  BAIL AND PLEADING REQUESTED ON 09/08/2006

09/13/2006 Charge(s): 1
           HEARING -  ARRAIGNMENT SCHEDULED FOR 09/28/2006 @ 8:00

09/13/2006 WRIT -  HABEAS CORPUS TO PROSECUTE ISSUED ON 09/13/2006

           CERTIFIED COPY TO SHERIFF DEPT.
09/22/2006 ORDER -  SPECIAL ASSIGNMENT ENTERED ON 09/19/2006
           THOMAS E HUMPHREY , SUPERIOR COURT CHIEF JUSTICE
                 JUSTICE NANCY MILLS ASSIGNED
09/25/2006 Party(s): THOMAS H MITCHELL JR
           ATTORNEY -  RETAINED ENTERED ON 09/20/2006
                                 •
           Attorney: JAMES STRONG
09/28/2006 Charge(s): 1
           HEARING -  ARRAIGNMENT HELD ON 09/28/2006 @ 8:00
           NANCY MILLS , JUSTICE
           Attorney: JAMES STRONG
           DA: WILLIAM STOKES         Reporter: JANETTE COOK
           Defendant Present in Court

           READING WAIVED. DEFENDANT INFORMED OF CHARGES.  COPY OF INDICTMENT/INFORMATION GIVEN TO
           DEFENDANT.  21 DAYS TO FILE MOTIONS
09/28/2006 Charge(s): 1
           PLEA -  NO ANSWER ENTERED BY DEFENDANT ON 09/28/2006

01/10/2007 HEARING -  HARNISH BAIL HEARING SCHEDULED FOR 01/18/2007 @ 8:00

01/10/2007 WRIT -   HABEAS CORPUS TO TESTIFY ISSUED ON 01/10/2007

          CERTIFIED COPY TO SHERIFF DEPT.
01/26/2007 HEARING -   HARNISH BAIL HEARING HELD ON 01/18/2007
          NANCY  MILLS , JUSTICE
          Attorney:  JAMES STRONG
          DA:  FERNAND LAROCHELLE        Reporter: JANETTE COOK
          Defendant Present in Court
01/26/2007 BAIL BOND -   NO BAIL ALLOWED SET BY COURT ON 01/18/2007


01/26/2007 ORDER -   TRANSCRIPT ORDER FILED ON 01/18/2007

          JANETTE RECEIVED A COPY THAT DAY AT COURT
01/26/2007 OTHER FILING -   TRANSCRIPT FILED ON 01/26/2007


          RECEIVED TRANSCRIPT OF HARNISH HEARING
03/15/2007 Charge(s): 1
          MOTION -   MOTION FOR ENLARGEMENT OF TIME FILED BY DEFENDANT ON 03/15/2007


          Attorney:  JAMES STRONG
03/16/2007 Charge(s): 1
          MOTION -   MOTION FOR ENLARGEMENT OF TIME GRANTED ON 03/15/2007


          COPY TO PARTIES/COUNSEL
04/11/2007 MOTION -   MOTION FOR DISCOVERY FILED BY STATE ON 04/11/2007


05/03/2007 MOTION -   MOTION FOR DISCOVERY GRANTED ON 05/02/2007
          NANCY  MILLS , JUSTICE
          COPY TO PARTIES/COUNSEL
05/17/2007 MOTION -   MOTION TO SUPPRESS FILED BY DEFENDANT ON 05/16/2007


          MOTION TO SUPRESS RESULTS FROM DNA TESTS OF ORAL SWABS TAKEN FROM JUDY FLAGG
05/17/2007 MOTION -   MOTION TO SUPPRESS FILED BY DEFENDANT ON 05/16/2007


          MOTION TO SUPPRESS AND EXCLUDE THE RESULTS OF EXAMINATIONS OF FOOTWEAR COMPARISONS.
05/18/2007 Charge(s): 1
          MOTION -   MOTION TO DISMISS FILED BY DEFENDANT ON 05/16/2007


05/18/2007 Charge(s): 1
          MOTION -   MOTION TO SUPPRESS FILED BY DEFENDANT ON 05/16/2007


          MOTION TO SUPPRESS DNA TESTS CONDUCTED ON THE FINGERNAILS CLIPPED FROM THE BODY OF JUDY
          FLAGG
05/18/2007 MOTION -   OTHER MOTION FILED BY DEFENDANT ON 05/16/2007


          MOTION TO INSPECT AND TEST TANGIBLE EVIDENCE
05/18/2007 Charge(s): 1
          MOTION -   MOTION FOR DISCOVERY FILED BY DEFENDANT ON 05/16/2007


          COMBINED WITH REQUEST FOR BILL OF PARTICULARS
05/18/2007 Charge(s): 1
          MOTION -   OTHER MOTION FILED BY DEFENDANT ON 05/16/2007

MOTION FOR LEAVE TO FILE ADDITIONAL MOTIONS
05/18/2007 Charge(s): 1
     HEARING -  MOTION TO SUPPRESS SCHEDULED FOR 08/10/2007 @ 8:00

     NOTICE  TO PARTIES/COUNSEL
05/18/2007 Charge(s): 1
     HEARING -  MOTION TO SUPPRESS NOTICE SENT ON 05/18/2007

05/18/2007 Charge(s): 1
     HEARING -  MOTION TO SUPPRESS SCHEDULED FOR 08/10/2007 @ 8:00

     NOTICE  TO PARTIES/COUNSEL
05/18/2007 Charge(s): 1
     HEARING -  MOTION TO SUPPRESS NOTICE SENT ON 05/18/2007

05/18/2007 Charge(s): 1
     HEARING -  MOTION TO SUPPRESS SCHEDULED FOR 08/10/2007 @ 8:00

     NOTICE  TO PARTIES/COUNSEL
05/18/2007 Charge(s): 1
     HEARING -  MOTION TO SUPPRESS NOTICE SENT ON 05/18/2007

05/18/2007 Charge(s): 1
     HEARING -  MOTION TO DISMISS SCHEDULED FOR 08/10/2007 @ 8:00

     NOTICE  TO PARTIES/COUNSEL
05/18/2007 Charge(s): 1
     HEARING -  MOTION TO DISMISS NOTICE SENT ON 05/18/2007

05/18/2007 HEARING -  OTHER MOTION SCHEDULED FOR 08/10/2007 @ 8:00

     MOTION TO INSPECT AND TEST TANGIBLE EVIDENCE
05/18/2007 HEARING -  OTHER MOTION NOTICE SENT ON 05/18/2007

     MOTION TO INSPECT AND TEST TANGIBLE EVIDENCE
05/18/2007 Charge(s): 1
     HEARING -  MOTION FOR DISCOVERY SCHEDULED FOR 08/10/2007 @ 8:00

     NOTICE  TO PARTIES/COUNSEL
05/18/2007 Charge(s): 1
     HEARING -  MOTION FOR DISCOVERY NOTICE SENT ON 05/18/2007

05/18/2007 Charge(s): 1
     HEARING -  OTHER MOTION SCHEDULED FOR 08/10/2007 @ 8:00

     MOTION FOR LEAVE TO FILE ADDITIONAL MOTIONS
05/18/2007 Charge(s): 1
     HEARING -  OTHER MOTION NOTICE SENT ON 05/18/2007

     MOTION FOR LEAVE TO FILE ADDITIONAL MOTIONS
08/03/2007 OTHER FILING -  OTHER DOCUMENT FILED ON 08/03/2007

STATE'S RESPONSE TO MOTION TO SUPPRESS
10/17/2007 Charge(s): 1
        HEARING -   OTHER MOTION CONTINUED ON 08/10/2007


        MOTION FOR LEAVE TO FILE ADDITIONAL MOTIONS
10/17/2007 Charge(s): 1
        HEARING -   MOTION FOR DISCOVERY CONTINUED ON 08/10/2007


10/17/2007 HEARING -   OTHER MOTION CONTINUED ON 08/10/2007


        MOTION TO INSPECT AND TEST TANGIBLE EVIDENCE
10/17/2007 Charge(s): 1
        HEARING -   MOTION TO DISMISS CONTINUED ON 08/10/2007


10/17/2007 Charge(s): 1
        HEARING -   MOTION TO SUPPRESS CONTINUED ON 08/10/2007


10/17/2007 Charge(s): 1
        HEARING -   MOTION TO SUPPRESS CONTINUED ON 08/10/2007


10/17/2007 Charge(s): 1
        HEARING -   MOTION TO SUPPRESS CONTINUED ON 08/10/2007


02/01/2008 OTHER FILING -   OTHER DOCUMENT FILED ON 02/01/2008


        STATE'S DEMAND FOR NOTICE OF ALIBI PURSUANT TO RULE 16A(B)(3) OF THE MAINE RULES OF
        CRIMINAL PROCEDURE
02/08/2008 LETTER -   FROM PARTY FILED ON 02/08/2008


        LETTER FILED BY DEF FOR JUSTICE MILLS REGARDING A COMPLAINT.
05/05/2008 HEARING -   CONFERENCE SCHEDULED FOR 05/09/2008 @ 7:45
        NANCY  MILLS , JUSTICE
        NOTICE TO PARTIES/COUNSEL
05/12/2008 HEARING -   CONFERENCE HELD ON 05/09/2008
        NANCY  MILLS , JUSTICE
        Defendant Present in Court
05/12/2008 Charge(s): 1
        HEARING -   OTHER MOTION SCHEDULED FOR 06/12/2008 @ 8:30
        NANCY  MILLS , JUSTICE
        MOTION FOR ADDITIONAL TIME TO FILE MOTIONS
05/12/2008 HEARING -   MOTION FOR DISCOVERY SCHEDULED FOR 06/12/2008 @ 8:30
        NANCY  MILLS , JUSTICE
        NOTICE  TO PARTIES/COUNSEL
05/12/2008 HEARING -   OTHER MOTION SCHEDULED FOR 06/12/2008 @ 8:30
        NANCY  MILLS , JUSTICE
        MOTION TO INSPECT AND TEST TANGIBLE EVIDENCE
05/12/2008 HEARING -   MOTION TO DISMISS SCHEDULED FOR 06/12/2008 @ 8:30
        NANCY  MILLS , JUSTICE
        NOTICE  TO PARTIES/COUNSEL
05/12/2008 HEARING -   MOTION TO SUPPRESS SCHEDULED FOR 06/12/2008 @ 8:30
        NANCY  MILLS , JUSTICE
        NOTICE  TO PARTIES/COUNSEL
05/12/2008 HEARING -   MOTION TO SUPPRESS SCHEDULED FOR 06/12/2008 @ 8:30

NANCY MILLS , JUSTICE
NOTICE TO PARTIES/COUNSEL
05/12/2008 HEARING - MOTION TO SUPPRESS SCHEDULED FOR 06/12/2008 @ 8:30
NANCY MILLS , JUSTICE
NOTICE TO PARTIES/COUNSEL
06/17/2008 OTHER FILING - OTHER DOCUMENT FILED ON 06/16/2008

PHOTOCOPIES OF MATERIALS WHICH PURPORTED TO DOCUMENT THOMAS MITCHELL'S MOVEMENTS OVER A
PERIOD OF TIME, MARKED AS STATE'S EXHIBIT 27
06/17/2008 HEARING - MOTION TO SUPPRESS HELD ON 06/12/2008
NANCY MILLS , JUSTICE
Attorney: JAMES STRONG
DA: WILLIAM STOKES          Reporter: PEGGY STOCKFORD
Defendant Present in Court
06/17/2008 HEARING - MOTION TO SUPPRESS HELD ON 06/12/2008
NANCY MILLS , JUSTICE
Attorney: JAMES STRONG
DA: WILLIAM STOKES          Reporter: PEGGY STOCKFORD
Defendant Present in Court
06/17/2008 HEARING - MOTION TO SUPPRESS HELD ON 06/12/2008
NANCY MILLS , JUSTICE
Attorney: JAMES STRONG
DA: WILLIAM STOKES          Reporter: PEGGY STOCKFORD
Defendant Present in Court
06/17/2008 HEARING - MOTION TO DISMISS HELD ON 06/12/2008
NANCY MILLS , JUSTICE
Attorney: JAMES STRONG
DA: WILLIAM STOKES          Reporter: PEGGY STOCKFORD
Defendant Present in Court
06/17/2008 Charge(s): 1
MOTION - MOTION TO SUPPRESS UNDER ADVISEMENT ON 06/12/2008
NANCY MILLS , JUSTICE
06/17/2008 Charge(s): 1
MOTION - MOTION TO DISMISS UNDER ADVISEMENT ON 06/12/2008
NANCY MILLS , JUSTICE
06/18/2008 HEARING - OTHER MOTION HELD ON 06/12/2008

MOTION TO INSPECT AND TEST TANGIBLE EVIDENCE
06/18/2008 HEARING - MOTION FOR DISCOVERY HELD ON 06/12/2008

06/18/2008 Charge(s): 1
HEARING - OTHER MOTION HELD ON 06/12/2008
NANCY MILLS , JUSTICE
Reporter: PEGGY STOCKFORD
MOTION FOR ADDITIONAL TIME TO FILE MOTIONS
07/22/2008 OTHER FILING - TRANSCRIPT FILED ON 07/22/2008

MOTIONS HEARING
08/12/2008 Charge(s): 1
OTHER FILING - OTHER DOCUMENT FILED ON 08/12/2008

Attorney: JAMES STRONG
LETTER TO CONFIRM AGREEMENT BY TELEPHONE THIS DATE, AUGUST 11, 2008 THAT WE