340 So.2d 1144 (1976)
Clarence WILLIAMS, alias
v.
STATE.
6 Div. 188.
Court of Criminal Appeals of Alabama.
October 19, 1976.
Rehearing Denied November 16, 1976.
Drake & Knowles, University, for appellant.
William J. Baxley, Atty. Gen., and Jack A. Blumenfeld, Asst. Atty. Gen., for the State, appellee.
BOOKOUT, Judge.
Possession of amphetamines; three years, fine of $2,000.00. Possession of marijuana; three years, file of $500.00.
*1145 This case was originally assigned to the author of the dissenting opinion. The facts and assignments of error are stated in detail in that dissent, and we need not repeat them here.
Appellant was arrested when police executed a search warrant on the apartment of one Anna Duncan. Appellant was present in the apartment when the search took place. No amphetamines or marijuana were found on his person or in his clothing.
The record reveals that the State failed to prove, in its case in chief, that the appellant possessed either amphetamines or marijuana. No actual possession was shown; no evidence was presented from which a jury could infer that the appellant knew of the presence of the drugs; and no constructive possession was shown.
Constructive possession could only arise where the prohibited material is found on the premises owned or controlled by the appellant. No evidence was presented showing that the appellant owned or controlled the premises here.
Possession must be shown by three attributes: (1) Actual or potential control; (2) Intention to exercise dominion; and (3) External manifestation of intent and control. Radke v. State, 292 Ala. 290, 293 So.2d 314, affirming this Court's opinion in 52 Ala.App. 397, 293 So.2d 312 (1974); Garsed v. State, 51 Ala.App. 622, 288 So.2d 161 (1973); DeGruy v. State, 56 Ala.App. 521, 323 So.2d 406 (1975), cert. denied 295 Ala. 399, 323 So.2d 411. The evidence in the instant case is insufficient to show any of the attributes of possession as defined in those decisions and cases cited therein.
Testimony given after the State had rested its case and the motion to exclude had been presented, cannot be used to support the verdict of the jury.[1] In considering the question as to whether the trial court correctly overruled the motion to exclude, we can only consider the evidence which was before the trial court at the time the motion to exclude was made. Livingston v. State, 44 Ala.App. 559, 216 So.2d 731 (1968); Tooson v. State, 56 Ala.App. 613, 324 So.2d 327 (1975), cert. denied 295 Ala. 426, 324 So.2d 333. At the time the motion to exclude was made, the State had only shown that the appellant was present in the apartment of some other person, dressed in rumpled clothing, sans shoes and jacket. He retrieved both his shoes and his jacket from the bedroom when placed under arrest. Whether appellant knew that prohibited drugs were in the apartment, or whether the appellant exercised some dominion or control over the apartment is left to mere conjecture and speculation. The motion to exclude should have been granted. The appellant is due a new trial.
REVERSED AND REMANDED.
CATES, P. J., and TYSON, J., concur.
HARRIS and DeCARLO, JJ., dissent.
DeCARLO, J., files dissenting opinion.
DeCARLO, Judge, dissenting.
James C. Britton was employed as a toxicologist and laboratory director in the Tuscaloosa Division of the State Department of Toxicology and Criminal Investigation. On March 5, 1975, Sgt. Lloyd Russell of the West Alabama Narcotics Squad delivered a package to him, bearing the initials "E. W." across the seal of the envelope. Inside the large envelope were several small envelopes containing various items received in connection with the investigation of a case involving Clarence Williams. He testified that his analysis of the envelope disclosed 150.5 grams of marijuana, 19 amphetamine tablets, a meprobamate tablet and 32 amphetamine tablets.
James L. Darnell, on March 4, 1975, was a police officer with the city of Tuscaloosa and was assigned to the narcotics squad. Approximately 9:15 that morning, Darnell, along with Deputy Larry Massey, ABC Agent Walden, Joe Perkins and City Detective *1146 Thomas Elmore, went to a government housing project located in the Holt area of Tuscaloosa, Alabama. They had gone to that address pursuant to a search warrant they had for the dwelling of Anna Duncan. Upon their arrival, Darnell and Officer Massey went to the rear door of the apartment and the other officers went to the front door. Subsequently, ABC Agent Walden unlocked the rear door and he and Massey went inside the apartment. They walked into the living room and remained there until the "Miranda rights" were read to the appellant and a female, Michele Graves. At the time, the appellant was dressed in pants and a shirt but was not wearing any shoes. His clothes appeared to be rumpled and his shirt-tail was on the outside of his pants. During his search of the left rear bedroom, Darnell found a white plastic bag containing five small bags of marijuana. On the dresser in the same bedroom, he found a small manila envelope which contained 27 pink, heart shaped pills. Also, in a jewelry box on the dresser he found more pink pills and these along with the other pills and the marijuana were given to agent Walden.
Further, in one of the drawers of the same dresser a billfold, containing several sets of identification along with several credit cards bearing different names, was found. The billfold was located in the back of the drawer underneath some female under garments and some men's socks. Darnell said that he did not determine who owned the wallet and could not say whether or not the appellant's driver's license was in the wallet. According to Darnell, the driver's license bore the last name "Williams" but he did not know if the first name was "Clarence."
During cross-examination, Darnell stated that other items of male clothing were found but he was unable to determine the ownership. Darnell said that before the appellant left the apartment, he was taken into the back bedroom to pick up his shoes and jacket. He recalled that the shoes were on the floor near the bed and the jacket was lying on some clothing on a chair or couch.
Joseph W. Perkins, Sr., on March 4, 1975, was a constable for Beat 15, in Tuscaloosa County, and around 9:00 A.M. that day was working with the West Alabama Narcotics Squad when they made the search of Anna Duncan's apartment. He testified that upon arriving some of the men went toward the back of the house and he accompanied several of the other men to the front. They knocked several times and after hearing voices inside, the officers identified themselves and stated their purpose. After several minutes passed, and they were unable to get anyone to the door, they opened it by force. Perkins said that the first thing he noticed when he went into the apartment was a "red-headed lady" running toward the kitchen. She grabbed an object from the table and started back in the direction where he and the other officers were. She was stopped, and clutched in her hand they saw half of a marijuana cigarette. Perkins first saw the appellant when he came down the hall and turned into the living room. He stated that appellant was dressed in light colored clothing but did not believe he had any shoes on at the time. Perkins began searching the kitchen and then went into the living room, where he found a white tablet on a table and a "leather pouch" containing black capsules on the inside of a chair. These capsules, along with the white tablet, were turned over to Mr. Walden. According to Perkins, just before leaving he accompanied the appellant to the bedroom to get his shoes. The shoes were located between the bed and the dresser. Perkins did not recall whether the appellant had on socks but said appellant put on a jacket just before they left the apartment.
During cross-examination he stated that Officer Darnell and another officer came in the back door after he and the other officers came through the front door. Further he did not know whether Clarence Williams rented the apartment but was told by someone in the office of the apartment building that it was rented by Anna Duncan.
*1147 Earl Walden was a drug enforcement agent with the ABC Board and was assigned to the West Alabama Narcotics Squad. On March 4, 1975, while working in that capacity, he along with other officers searched Duncan's apartment. After entry was made he observed Michele Graves in the kitchen with her hands behind her back. He did not see anyone else at the time, but later saw the defendant in the left rear bedroom. Walden said he did not know the appellant was in the apartment until he heard another officer talking to him. Walden recalled that the defendant was wearing a printed white shirt and "blue jeans." Appellant's clothes appeared to be wrinkled and the top portion of his shirt was unbuttoned. Walden said that he did not believe that defendant was wearing shoes at the time.
During the search, Walden was the "evidence man" and received various items from the other agents and took pictures after they were discovered. Among the items received from the other officers were bags of marijuana, a phenobarbital tablet, amphetamine tablets, a meprobamate tablet, and a marijuana cigarette. All these items were later carried to the State Toxicologist's Office.
Walden stated that after Williams had been warned of his constitutional rights, a billfold was found in the dresser. Appellant denied owning the billfold but said the pictures and the drivers license in it were his.
Walden recalled that the person named in the warrant was Anna Duncan and the appellant was not mentioned. He had no knowledge that appellant lived at the apartment and did not know that appellant was on the premises until he saw him there. Walden also recalled that Anna Duncan was not present at the time of the search but was charged with possession of controlled substances.
At the end of Walden's testimony the State rested its case and the appellant, out of the presence of the jury, made a motion to exclude. Defense counsel argued that the State had failed to present a prima facie case of possession of marijuana or of possession of amphetamines. The court overruled the motion.
After the court's ruling the proceedings were continued before the jury, and appellant called Anna Lois Duncan. It was her apartment that was searched by the Tuscaloosa Narcotics Department on the morning of March 4, 1975. She had taken her children to school about 7:30 A.M. on that date and afterwards had gone to the food stamp office where she was later arrested. Mrs. Duncan testified that the drugs found during the search belonged to her. She said Clarence Williams was a friend of hers and that she saw him once or twice a week. Duncan stated she had not seen him for two days but had talked to him on the phone the night before the search. Appellant had left his jacket at the apartment and she left a note in case he came back to get it. In the note, she told the appellant "don't leave until I get home." Duncan said that she had written another note in which she explained that she was wearing his jacket to the food stamp office. She maintained she had not planned to see the appellant and the note was written in the event he came by to pick up his jacket.
According to Duncan, Michele Graves was a friend who lived with her and would baby-sit with her children. Duncan stated there was no men's clothing in her apartment but added that she had a twelve-year-old son who weighed about 130 pounds and if any clothes were there they belonged to him. Further, she said that the appellant, "had nothing at my house, his billfold was not at my house that I know of." Also, she denied any knowledge of what he would be doing in her bedroom and why his shoes would be under her bed.
Willie Williams was the father of the appellant and he testified that the appellant was living with him at the time of the search on March 4, 1975. According to Williams, the appellant stayed at home on the night of March 3rd and he did not drive the appellant to Woodmont on the day in question.
*1148 Clarence Williams testified he was living with his father on March 4, 1975, and that after showering and dressing, his brother drove him to Anna Duncan's apartment. It was sometime after 8 A.M. when he arrived and knocked on the door. When he received no response, he opened the door and went inside. Subsequently, Michele Graves appeared and he inquired about Anna Duncan. According to the appellant, he asked to use the bathroom and while there he heard someone, "bust in the door." He said he became frightened and ran toward the back of the apartment. There he removed his wallet and put it in the drawer. He explained that some of the cards in the wallet were not his and that was the reason for putting the wallet in the drawer.
On cross-examination he testified that he did not have any conversation with Michele Graves other than the two inquiries. He denied having his shoes off and stated he was fully dressed. Williams maintained he did not have any jackets there other than the one he was wearing. Further, he said that the billfold contained his draft card, social security card, driver's license, and his birth certificate. He explained that the two credit cards were found in Chicago and that some of the identification belonged to his brother, Willie Williams. He admitted that he would not talk to the officers and that he had told them his name was Willie Williams. Further, he denied any knowledge of the drugs and denied seeing Anna Duncan's note. According to appellant, the last time he talked with Anna Duncan was the night before the search when she telephoned him at his father's house. Duncan told him she was leaving town and that he should come by and pick up his jacket.

I
The appellant contends that the evidence presented by the State was insufficient to support a finding of guilt by the jury and the trial court erred in not granting his motion to exclude or request for the affirmative charge.
While mere presence at the scene, standing alone, is not sufficient to sustain a finding of guilt, on the charge of illegal possession of drugs, and while actual knowledge of the presence of illegal narcotics is essential in such a case, the surrounding facts and circumstances may be sufficient to establish the essential facts of knowledge, and physical or constructive possession. Rueffert v. State, 46 Ala.App. 36, 237 So.2d 520; Womack v. State, 34 Ala.App. 487, 41 So.2d 429; Parks v. State, 46 Ala. App. 722, 248 So.2d 761.
In the instant case it was established that the appellant was present with a female in the apartment where the drugs were found. He was seen coming from the direction of the room where drugs were found and his jacket was near the closet where the marijuana was discovered. The appellant's wallet was in a drawer of the dresser on which amphetamines were found. Also, Michele Graves was seen in the apartment with a partially burned marijuana cigarette. Further, men's socks, pants, and shirts were found. The appellant's shoes were found under the bed and at the time the officers entered the apartment the appellant was shoeless. On the kitchen table a note written by Anna Duncan, the lessee of the apartment, was found. It was addressed to the appellant wherein he was directed not to leave until she returned.
Under these circumstances, even though appellant presented conflicting evidence, the question of whether Clarence Williams knew of and was in actual or constructive possession of the narcotics, became a question for the jury.
Moreover, the fact that the appellant presented conflicting evidence to contradict the State's evidence would not have altered this fact. Conflicting evidence always presents a question for the jury as to the guilt of the defendant. Waters v. State, 55 Ala.App. 646, 318 So.2d 342; Carr v. State, 56 Ala.App. 125, 319 So.2d 744; Jemison v. State, 56 Ala.App. 6, 318 So.2d 746.

II
The appellant next complained that the district attorney during his final argument *1149 to the jury, made certain remarks to the jury which were prejudicial and improper. He insists there was no evidence presented during the trial which would support this statement:

. . . . .
"MR. HARRIS: Because if he was exercising control over that place and staying there and he had to have known what was going on. Because you look at the bag. There are five individually wrapped packages and if a person was buying it for their own use, you know as well as I do they wouldn't have five individually wrapped packages. It's right there for sale. Now it doesn't take anybody too long to figure that out, and here's Anna Duncan and I'm sorry to say, but I tell you it upsets me, because do you realize, and I'm not against the poor, the downtrodden, anybody that doesn't have a chance, and anybody that knows me will tell you that. But to think that we as tax payers are setting up and financing a drug operation in a government project . . .
"MR. FORTE: Oh, we're going to object to that. Highly prejudicial.
"THE COURT: Overruled."
No legal standard exists by which one can measure the prejudicial qualities of improper remarks in every case; each case must be determined on its own merits. Smith v. State, 282 Ala. 268, 210 So.2d 826. Nonetheless, great latitude is allowed counsel in making his appeal to the jury and drawing inferences from the evidence. Cross v. State, 68 Ala. 476; Beaird v. State, 219 Ala. 46, 121 So. 38; Alexander v. State, 37 Ala. App. 533, 71 So.2d 520.
In view of the testimony that there was a sizable amount of illegal drugs found in the apartment of a government project and the apartment's lessee's statement that she was at the food stamp office gave evidentiary support to counsel's comments. I think that the district attorney's deductions were within the boundary of arguable inferences allowable under the evidence.
Based on the foregoing reasons, it is my opinion that this case should be affirmed.
NOTES
[1] Even if subsequent testimony could have been considered, it was still insufficient here to show the requisite knowledge or possession.