Rel:   December 8, 2023

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**.  Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## OCTOBER TERM, 2023-2024

_____

### SC-2023-0020
_____

**Ex parte Demetrius Issac Carey**

**PETITION FOR WRIT OF CERTIORARI
TO THE COURT OF CRIMINAL APPEALS**

**(In re: Demetrius Issac Carey**

**v.**

**State of Alabama)**

**(Mobile Circuit Court, CC-18-6270;
Court of Criminal Appeals, CR-2022-0718)**

PARKER, Chief Justice.

Demetrius Issac Carey was convicted of possessing a firearm in violation of § 13A-11-72(a), Ala. Code 1975, and was sentenced as a

habitual offender to 50 years in a state penitentiary. The Court of Criminal Appeals affirmed his conviction in an unpublished memorandum, Carey v. State (No. CR-2022-0718, Dec. 9, 2022), ___ So. 3d ___ (Ala. Crim. App. 2022) (table). Carey sought certiorari review, which this Court granted. We affirm the judgment of the Court of Criminal Appeals.

Facts

In 2017, Officer Mark McCormick of the Mobile Police Department responded to a report of a domestic-violence incident involving a firearm at a single-story apartment complex. Officer McCormick called out for anyone in the apartment to come out. A woman named Lakeisha Sims immediately came out with her hands in the air, followed a few minutes later by Carey, who was naked. Carey asked Officer McCormick to retrieve a pair of jeans, which he specifically identified as "brown on the front." Officer McCormick found the jeans where Carey had directed him, and he searched them for weapons before returning them to Carey. In the left hip pocket of the jeans, Officer McCormick found a single blue pill and a magazine for a Springfield Armory XD 9mm handgun, containing 13 rounds of ammunition. Officer McCormick found a Springfield Armory

XD 9mm handgun under a few items of clothing in a basket containing dirty laundry. The handgun was the model for which the magazine located in Carey's jeans pocket was designed, and it contained a similar magazine.

Detective Jeremy Burch of the Mobile Police Department interviewed Carey later at police headquarters. Carey admitted to ownership of the jeans and the blue pill found in the pocket, but he denied ownership or knowledge of the magazine found in the same pocket or of the handgun found in the laundry basket.

A grand jury indicted Carey for unlawful possession of a firearm in violation of §13A-11-72(a), which provides, in relevant part:

> "No person who has been convicted in this state or elsewhere of committing or attempting to commit a crime of violence, misdemeanor offense of domestic violence, violent offense as listed in Section 12-25-32(15), [Ala. Code 1975,] anyone who is subject to a valid protection order for domestic abuse, or anyone of unsound mind shall own a firearm or have one in his or her possession or under his or her control."

Testimony at trial showed that the registered occupant of the apartment was not Carey, but Darinicia Sims. The evidence also showed that the apartment was not Carey's residence; that there was no indication of how long he had been there that day; and that the handgun was not found on

3

his person. Carey moved for a judgment of acquittal on the basis that insufficient evidence had been presented to establish that he owned, controlled, or had knowledge about the handgun found in the laundry basket. The circuit court denied the motion and submitted the case to the jury, which returned a guilty verdict on the same day as the trial. The circuit court sentenced Carey as a habitual offender to 50 years' imprisonment.

Carey appealed to the Court of Criminal Appeals. That court, in an unpublished memorandum, held that "there was sufficient circumstantial evidence from which the jury could infer that Carey constructively possessed the firearm found in the laundry basket," and it affirmed Carey's conviction and sentence. Carey timely filed an application for rehearing, which the Court of Criminal Appeals overruled. Carey petitioned this Court for a writ of certiorari, arguing that the precedents addressing constructive possession are conflicting. We granted the petition and issued the writ.

<u>Standard of Review</u>

Carey filed a motion for a judgment of acquittal, asserting that the evidence was not sufficient to support a conviction, which the circuit

court denied. In reviewing whether the evidence is sufficient to support

a conviction,

> "'[T]his court must view that evidence in the light most favorable to the prosecution. The [inquiry] is whether the jury might reasonably find that the evidence excluded every reasonable hypothesis except that of guilt; not whether such evidence actually excludes every reasonable hypothesis but guilt, but whether a jury might reasonably so conclude.'"

Dolvin v. State, 391 So. 2d 133, 137 (Ala. 1980) (quoting Cumbo v. State,

368 So. 2d 871, 874 (Ala. Crim. App. 1978)).

Analysis

Carey argues that the prosecution presented no evidence at trial to

show that he "owned or controlled" the dwelling where the handgun was

found. He relies on Williams v. State, 340 So. 2d 1144, 1145 (Ala. Crim.

App. 1976), Crane v. State, 401 So. 2d 148, 149 (Ala. Crim. App. 1981),

and their progeny. The Court of Criminal Appeals did not address this

issue in its unpublished memorandum. The State counters that the

magazine in Carey's jeans pocket clearly linked him with the handgun

and that "jurors need not leave their common sense at the door" when

making findings of this sort.

Because Carey had not been in actual control of the handgun, the

State had to prove that he had constructively possessed it by showing the

5

following: (1) actual or potential physical control; (2) intention to exercise dominion; (3) external manifestations of intent and control (Radke v. State, 52 Ala. App. 397, 398, 293 So. 2d 312, 313 (Crim. 1973), aff'd, 292 Ala. 290, 293 So. 2d 314 (1974)); and (4) knowledge of the presence of the prohibited item (Ex parte Tiller, 796 So. 2d 310, 312 (Ala. 2001)).[1] These requirements have long been treated as the "elements" of constructive possession. See, e.g., Ex parte Fitkin, 781 So. 2d 182, 183 (Ala. 2000); Bright v. State, 673 So. 2d 851, 852 (Ala. Crim. App. 1995); Radke, 52 Ala. App. at 398, 293 So. 2d at 313. Carey essentially asks this Court to adopt a fifth element of constructive possession -- ownership or control of the premises where the prohibited item was located. We decline to do so.

Carey relies upon a rule adopted by the Court of Criminal Appeals and this Court in certain cases in which there was no direct evidentiary link between the prohibited item and the person charged with constructive possession. In Williams v. State, 340 So. 2d 1144, 1145 (Ala. Crim. App. 1976), "the State had only shown that the [defendant] was

---

[1]Although the first three of these elements have sometimes been referred to as "attributes," see, e.g., Radke, 52 Ala. App. at 398, 293 So. 2d at 313, we clarify here that these are, in fact, the elements of constructive possession in Alabama law.

present in the apartment of some other person, dressed in rumpled clothing, sans shoes and jacket," and "[w]hether [the defendant] knew that prohibited drugs were in the apartment … [was] left to mere conjecture and speculation." The Williams court held that because the defendant did not own or control the apartment, the State had failed to prove constructive possession. Id.

In Crane v. State, 401 So. 2d 148 (Ala. Crim. App. 1981), the Court of Criminal Appeals reversed the conviction of a defendant who had been standing in the downstairs foyer of an apartment when police arrived. He was charged with constructive possession of marijuana discovered by police in an upstairs bedroom of the apartment. "No evidence whatsoever was presented to the jury which would indicate that the [defendant] had any knowledge of or connection with the marijuana found by the police." Id. at 149. The Court in Crane held that, because the defendant did not own or control the apartment, and because there was no evidence connecting him with the marijuana, the State had failed to prove constructive possession. Id. at 150-51.

In Ex parte J.C., 882 So. 2d 274 (Ala. 2003), this Court reversed the judgment of the Court of Criminal Appeals affirming the conviction of a

juvenile defendant for trafficking in marijuana found in his father's bedroom. The juvenile was not even in the house when the search began. At trial, the State presented no evidence indicating that the juvenile had ever entered his father's bedroom or that he had any intent to exercise dominion over the marijuana found therein. Some drug paraphernalia was found in the juvenile's bedroom. However, this Court held that that evidence, by itself, did not show that the juvenile had possessed the particular marijuana found in the father's bedroom, especially when considering that no drugs had been found in the juvenile's bedroom. The Court in J.C. held that, in the absence of a direct evidentiary link between the juvenile and the marijuana, the State had failed to prove constructive possession. Id. at 278.[2]

A review of those cases reveals that the courts likely employed this requirement for one purpose: to keep third parties from being charged

---

[2]Carey does not rely directly on this part of J.C. in his petition or his brief, but the J.C. Court's adoption of the rule from Williams and Crane regarding ownership or control of the premises means that this Court must treat this rule as binding precedent. J.C. is also useful as a contrast to the instant case, because it helps illustrate the difference between the presence and absence of a direct evidentiary link between the prohibited item and a defendant charged with constructive possession.

with constructive possession of items located in someone else's dwelling in the absence of any evidentiary connection between the third parties and the items. In each of these cases, the defendant was charged with constructive possession of narcotics located inside a dwelling the defendant did not own. See, e.g., Williams, 340 So. 2d at 1145; Crane, 401 So. 2d at 150. Tellingly, in none of those cases was any evidence presented at trial linking the defendant directly with the narcotics. And even in J.C., in which it was shown that the juvenile defendant did live in his father's house, the State introduced no evidence at trial to connect the juvenile directly with the narcotics found in the house. J.C., 882 So. 2d at 278. Viewed in this light, the rule on which Carey relies was likely adopted to prevent criminal liability based on constructive possession from attaching to any third party unlucky enough to be in a dwelling where a prohibited item or contraband has been found. However, under that reasoning, criminal liability based on constructive possession could attach to the owner of the dwelling.

Carey is correct that those cases indicate that, in certain circumstances when no other evidence of constructive possession is present, "[w]here contraband is seized inside a residence, 'constructive

9

possession can only arise "where the prohibited material is found on the premises <u>owned or controlled</u> by the [defendant]."'" <u>J.C.</u>, 882 So. 2d at 277 (quoting <u>Crane</u>, 401 So. 2d at 149, quoting in turn <u>Williams</u>, 340 So. 2d at 1145). However, this Court would be construing the reasoning and holdings in those cases too broadly by making the ownership or control of the dwelling where a prohibited item or contraband is found a categorical element of constructive possession. When contraband is seized inside a dwelling <u>and there is no direct evidentiary link between the contraband and a defendant</u>, then the rule of <u>J.C.</u>, <u>Crane</u>, and <u>Williams</u> holds. When there <u>is</u> such a link, however, as there is in this case, whether the defendant had the ownership or control of the dwelling is not a requirement for finding constructive possession. Under those circumstances, ownership or control of the dwelling is a <u>sufficient</u>, but not <u>necessary</u>, basis for finding constructive possession. <u>Temple v. State</u>, 366 So. 2d 740, 743 (Ala. Crim. App 1978) ("While nonexclusive possession may raise the suspicion that all occupants had knowledge of the contraband found, a mere suspicion is not enough. ... <u>What is required is some evidence that connects the defendant with the contraband that is found</u>." (emphasis added)); <u>Radke</u>, 52 Ala. App. at 398, 293 So. 2d at 313

10

("'Constructive possession may arise where [contraband] is found on premises owned or controlled by the accused, provided the State further shows facts enabling a jury to conclude beyond a reasonable doubt that the accused knew of the presence of the [contraband].'" (quoting Davis v. State, 40 Ala. App. 609, 611, 119 So. 2d 236, 238 (Crim. 1960).

Holding that only the owner or controller of the dwelling can ever be held criminally liable based on constructive possession of a prohibited item in his dwelling takes the analysis too far. By such logic, no one can ever constructively possess any item, no matter how direct the evidentiary connection between the person and the item, in any dwelling that is not his own. This strict application can only lead to absurd results.[3]

Indeed, this Court has hinted at an alternate test for cases in which

---

[3]If Carey's argument is correct, then a drug dealer could not be convicted of possessing drugs located inside another person's dwelling, so long as the drugs were not on his person at the time the drugs were found by law enforcement and his actual possession of the drugs could not otherwise be established. Even if a large sum of cash was found in the drug dealer's pocket, the trial court would be prohibited from determining that the jury could reasonably infer that the money was the price of the drugs and that, therefore the drug dealer had constructively possessed the drugs. It would be absurd to interpret the rule of J.C., Crane, and Williams as Carey suggests so as to prevent a finding of constructive possession under these circumstances.

the defendant does not exclusively own or control the dwelling where a prohibited item or contraband is found. This Court has held that "'[w]hile non-exclusive possession may raise a suspicion that all the occupants had knowledge of the contraband found, a mere suspicion is not enough. <u>Some evidence that connects a defendant with the contraband is required</u>.'" <u>J.C.</u>, 882 So. 2d at 277-78 (quoting <u>Grubbs v. State</u>, 462 So. 2d 995, 997 (Ala. Crim. App. 1984) (emphasis added)). This Court has also stated that "'evidence that debris of the contraband was found on defendant's person or with his personal effects'" is sufficient to prove the defendant's constructive possession of the contraband, even when the defendant was merely an occupant of the dwelling. <u>Id.</u> at 278 (quoting <u>Grubbs</u>, 462 So. 2d at 997-98). This precedent would seem to dictate that, when circumstantial evidence establishes a direct inferential link between the defendant and the item he is charged with constructively possessing, whether the defendant owns or controls the dwelling is less material. See also 79 Am. Jur. 2d <u>Weapons and Firearms</u> § 10 (2013) ("Constructive possession of a weapon can be inferred from incriminating statements or circumstances linking the defendant to the weapon."); Emile F. Short, <u>Conviction of Possession of Illicit Drugs Found in Premises of which</u>

Defendant Was in Nonexclusive Possession, 56 A.L.R. 3d 948 § 4 ("[W]here the defendant is in nonexclusive possession of premises on which illicit drugs are found, it cannot be inferred that he knew of the presence of such drugs and had control of them, unless there are other incriminating statements or circumstances tending to buttress such an inference.").

In this case, a magazine designed for a particular handgun and containing ammunition for that handgun was found in a pocket of a pair of jeans Carey admittedly owned. The same pocket also contained a blue pill he identified as his own. A handgun of the exact make and model for which the magazine was designed was found nearby in a laundry basket, with a matching magazine. When viewed in favor of the prosecution, this evidence tends to connect Carey directly to the handgun found in the apartment. The question before this Court "'is not whether [the] evidence excludes every reasonable hypothesis but guilt, but whether a jury might reasonably so conclude.'" Dolvin, 391 So. 2d at 137 (quoting Cumbo, 368 So. 2d at 874). The evidence presented by the prosecution was sufficient to warrant submitting the case to the jury, and the circuit court reasonably concluded that the evidence was sufficient to support direct

inferences by the jury that Carey (1) had potential physical control of the handgun, (2) had the intent to exercise dominion over the handgun, (3) exhibited external manifestations of intent and control over the handgun, and (4) had knowledge of the presence of the handgun.[4]

## IV. Conclusion

The rule of <u>Williams</u>, <u>Crane</u>, and their progeny remains good law. This decision does not overturn those precedents. It merely recognizes that they are subject to a simple, commonsense limitation, and are not to be too strictly applied when the evidence establishes a direct inference connecting the defendant with the prohibited item he is charged with

---

[4]<u>Williams</u> and <u>Crane</u> apply to "contraband." Because guns are not prohibited items per se, the only way the handgun at issue in this case could be "contraband" is if Carey possessed it even though he is a person legally prohibited from possessing guns. But if the handgun belonged to Carey, a strict application of <u>Williams</u> and <u>Crane</u> would dictate that the jury <u>could not</u> find that Carey possessed the handgun because the handgun was not inside Carey's own residence. If the handgun was not Carey's, the handgun was not "contraband," and <u>Williams</u> and <u>Crane</u> do not apply. In that case, the jury <u>could</u> find that Carey constructively possessed the handgun -- at which point the handgun becomes "contraband" again. This kind of circular reasoning is a problem for the strict application of <u>Williams</u> and <u>Crane</u> outside of the context of possession of controlled substances. Neither party has asked this Court to overturn <u>Williams</u>, <u>Crane</u>, or <u>J.C.</u>, but this Court may need to clarify them in an appropriate case.

constructively possessing.

For the foregoing reasons, we affirm the judgment of the Court of Criminal Appeals.

AFFIRMED.

Wise, Bryan, Mendheim, Stewart, and Cook, JJ., concur.

Shaw, J., concurs in the result.

Mitchell, J., concurs in the result, with opinion, which Sellers, J., joins.

MITCHELL, Justice (concurring in the result).

I agree that the Court of Criminal Appeals' judgment upholding Demetrius Issac Carey's conviction and sentence should be affirmed. The State presented substantial evidence connecting Carey to the firearm hidden in the apartment; thus, the jury could have therefore reasonably concluded that Carey was in constructive possession of the firearm and in violation of § 13A-11-72(a), Ala. Code 1975.[5]

As the majority opinion explains, a defendant can be found to be in constructive possession of contraband only when there is substantial evidence connecting him to the contraband. See, e.g., Temple v. State, 366 So. 2d 740, 743 (Ala. Crim. App. 1978) (emphasizing that "[w]hat is required is some evidence that connects the defendant with the contraband that is found"). There is no requirement that the contraband be found on premises that the defendant owns or controls, notwithstanding some imprecise language that can be found in previous

---

[5]Section 13A-11-72(a) provides that "[n]o person who has been convicted in this state or elsewhere of committing or attempting to commit a crime of violence … shall own a firearm or have one in his or her possession or under his or her control."  Carey has previous convictions for robbery and assault.

caselaw. See, e.g., Crane v. State, 401 So.2d 148, 149 (Ala. Crim. App. 1981); Williams v. State, 340 So. 2d 1144, 1145 (Ala. Crim. App. 1976).

But just as a finding that a defendant owns or controls premises is not required to make a finding of constructive possession, neither is a finding of ownership or control over the premises on which contraband is found sufficient by itself to support a finding of constructive possession. See Radke v. State, 52 Ala. App. 397, 398, 293 So. 2d 312, 313 (Crim. 1973), aff'd, 292 Ala. 290, 293 So. 2d 314 (1974) ("'Constructive possession may arise where [contraband] is found on premises owned or controlled by the accused, provided the State further shows facts enabling a jury to conclude beyond a reasonable doubt that the accused knew of the presence of the [contraband].'" (emphasis added; citation omitted)). In other words, there must still be substantial evidence connecting the defendant to the found contraband even when there is evidence showing the defendant's ownership or control over the premises on which the contraband is found. I'm concerned that the majority opinion's statement that "ownership or control of the dwelling is a sufficient, but not necessary, basis for finding constructive possession,"

17

___ So. 3d at ___, could be misunderstood as suggesting otherwise. I

therefore concur in the result.[6]

Sellers, J., concurs.

---

[6]Additionally, I express no opinion as to footnotes 3 and 4, which I do not believe are essential to the opinion's holding.